PLAINFIELD BUILDING & LAND COMPANY, AND ANOTHER, PLAINTIFFS-RESPONDENTS, v. NEW JERSEY MORTGAGE AND TITLE COMPANY, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 21, 1951—Decided June 20, 1951.

Before Judges JACOBS, EASTWOOD and BIGELOW.

*Mr. Harvey Rothberg* argued the cause for the respondents.

*Mr. Ralph A. Corbin* argued the cause for the appellant (*Messrs. Corbin & Corbin,* attorneys).

The opinion of the court was delivered by

BIGELOW, J. A. D. The plaintiffs recovered judgment for certain moneys that they had paid defendant, under duress, as they claimed.

The defendant made a number of temporary, or construction loans to the plaintiffs, secured by mortgages. When one group of ten of these loans were agreed upon, the parties made a collateral oral agreement, the terms of which were stated in a letter written by the plaintiffs to the defendant and dated February 7, 1947:

"In connection with the ten construction loans being granted by your company on the following locations: * * * we hereby agree that your company will obtain the permanent loan to the purchaser of the property or we will pay a mortgage fee of $75. and we understand that upon receipt of this fee you will accept prepayment of the construction loan."

As may be surmised, plaintiffs were engaged in building dwellings that they expected to sell. Each buyer would wish to raise a large part of the purchase price on long-term mortgage. The defendant was in the business of financing such sales and desired to make the permanent loans. Early in the summer of 1947, the plaintiffs made contracts for the sale of five of the houses. On two of the properties, the defendant made the permanent loans, but on three of them it rejected the applications. Thereupon, the question arose whether the defendant was entitled to charge plaintiffs $75 in connection with each of these three. On July 2 defendant wrote the plaintiffs: "We feel that a $75.00 charge is fair for all concerned, and is also in accordance with your letter of February 4th last indicating that we would either obtain the loan or receive a fee of $75.00 on each mortgage in the event that the loans were placed with another financial institution."

Rothberg, the president of the plaintiff corporations, testifies that a Mr. Wilcox, representing defendant, "wouldn't permit any cancelled mortgage to be sent to my company unless we included the $75." On September 12, Rothberg wrote protesting against the charges, but concluding: "If you insist, we will pay them under protest, but only under protest." Defendant promptly answered under date of September 16, 1947: "Responding to the last paragraph in your letter in which you state that if we insist you will pay the fees only under protest, we beg to state that we cannot accept payment under that condition."

That ended the correspondence and the negotiations so far as appears from the testimony. Rothberg says that when the defendant rejected the three applications in the summer of 1947, "they told us they were not taking any more mortgage loans at that time." So plaintiffs did not offer defendant the mortgages on the remaining five lots. Plaintiffs made eight payments of $75 each on lots on which the defendant did not make the permanent loans. Note that plaintiffs never tendered the sums which they admit were due, without in-

cluding the additional $75. In each case they sent defendant a single check for principal and interest and the disputed sum. The dates of the payments were: November 1, December 15, and December 27, 1947, February 14, February 25, March 17, and June 28; 1948, and January 11, 1949. On February 15, 1950, plaintiffs instituted this action for the recovery of the money so paid, on the theory of duress. At the trial, they withdrew their claim respecting the December 27 payment. Defendant's motion for judgment was denied and the jury returned a verdict for plaintiffs for the other seven payments, totalling $525.

The legal principles which control the action are well established. If a person without fraud or coercion pays a demand which is not enforceable against him, the payment is voluntary and cannot be recovered back. Coercion or duress, which will render a payment involuntary, must be such a constraint, actual or threatened, as overcomes the mind of the one who makes the payment. The situation must be such that the person making the payment has no other adequate means for protecting his property. It is also the law that to constitute duress, the threatened action must be unlawful or wrongful. But actions may be wrongful within the meaning of the rule, though they are not criminal or tortious or in violation of a contractual duty. *Hochman v. Zigler's, Inc.*, 139 *N. J. Eq.* 139 (*Ch.* 1946), and earlier cases there cited. See also *Koewing v. Town of West Orange*, 89 *N. J. L.* 539 (*E. & A.* 1916) ; *McCrory Stores Corp. v. S. M. Braunstein*, 99 *N. J. L.* 166 (*E. & A.* 1923).

Plaintiffs argue that the evidence which we have recited permits the inference to be drawn that the defendant threatened to refuse cancellation of the seven mortgages, even though plaintiffs should pay the full amount of the loans with interest, unless plaintiffs would pay in addition the charge of $75 on each mortgage; and that such refusal was a wrongful act. The evidence does not, in our opinion, justify the inference. But we do not rest our decision on that feature of the case.

■ Even if defendant in the summer of 1947 wrongfully threatened to refuse cancellation of the mortgages, it is clear that plaintiffs had adequate means for protecting themselves without paying the bonuses demanded. From the beginning of July, 1947, when plaintiffs were warned that the defendant would or might insist on the payments, until the first payment of a disputed charge of $75, November 1, four months elapsed; and until January 11, 1949, the date of the last of the payments, a year and a half passed. Plaintiffs had more than ample time for consideration and for taking whatever legal action might be advisable.

A proceeding under *R. S.* 2:66–1 *et seq.* was suggested on the argument as the apt remedy in the circumstances. But statutes of this sort, which give a special authority in matters of cancellation to a law judge, are strictly construed, *Shields v. Lozear,* 34 *N. J. L.* 496, 508 (*E. & A.* 1870), for mortgages, redemption and cancellation all fall peculiarly within the field of equity. A careful reading of *R. S.* 2:66–3 raises a question whether cancellation of a mortgage record may be ordered by virtue of the statute in any case where the mortgagee appears and contests the claim of the mortgagor. The prime object of the statute is to provide a means for cancellation where the mortgagee cannot be found.

The obvious and sufficient remedy of plaintiffs was a suit in Chancery to redeem, in which all seven mortgages could be joined. On tendering to defendant the principal and interest that plaintiffs admitted to be due, and if it were refused, then paying the money into court together with disputed sums, plaintiffs could readily have obtained an interlocutory order for cancellation of the mortgages. *Fritz v. Simpson,* 34 *N. J. Eq.* 436 (*Ch.* 1881). The question of the exact amount due to defendant could have been determined later, at the final hearing.

Clearly there was no merit in the plaintiffs' action. The judgment is reversed with costs and with directions to enter judgment for defendant.