242 N.J. Super. 16 (1990)
575 A.2d 1375
PETERS WELL DRILLING CO., PLAINTIFF-APPELLANT,
v.
JAKOB HANZULA (DECEASED) AND VLADIMIR JOVICH, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 18, 1990.
Decided May 15, 1990.
*18 Before Judges KING, BAIME and KEEFE.
Silverman & Rozier, attorneys for appellant (Elizabeth S. Rozier and Robert B. Silverman, on the brief).
Vincent E. Halleran, Jr., attorney for respondents (Vincent E. Halleran, Jr., on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
Plaintiff sued to collect money allegedly due for the replacement of a well. Plaintiff lost at trial and now appeals from the judgment dismissing its complaint and awarding compensatory and punitive damages for slander of title on the counterclaim.
Plaintiff claims that the trial judge erred in finding for defendant on the counterclaim because filing a mechanic's notice of intention is absolutely privileged in all circumstances and cannot be the predicate for a slander of title action. Plaintiff also claims that there was no proof of an essential element of the slander of title claim, special damages. We disagree on both points and affirm.

*19 I
This is the general background. On June 2, 1987 plaintiff Peters Well Drilling Co. filed a complaint in the Superior Court, Law Division, against defendants Jakob Hanzula (deceased) and Vladimir Jovich, seeking a judgment for money due and owing. Plaintiff alleged that in March 1985 it performed well-drilling services for defendants at an agreed price of $1,604.19. Plaintiff contended that defendants paid $400 on account, leaving a balance of $1,204.19. It sought judgment for that amount with interest.
Defendant Vladimir Jovich, individually and as executor of the estate of co-defendant Jakob Hanzula, filed an answer and counterclaim. We will refer to Vladimir Jovich as defendant, in the singular. The answer included the defense of accord and satisfaction and asserted that defendant had complied with the terms of the agreement between the parties. Defendant alleged in his counterclaim that in March 1985 he employed plaintiff to replace a point well for an agreed price of $385. He alleged that Hanzula paid plaintiff in cash and that plaintiff falsified the bill to alter the amount due from $385 to $1,385. Defendant claimed that, upon inquiring about the falsification of the bill, he was advised by plaintiff's principal, Henry Peters, that Peters had padded it to recover monies defendant owed to a relative. Defendant alleged that in filing the lawsuit plaintiff acted maliciously, caused unnecessary legal expenses and slandered him.
Plaintiff filed a general denial to the counterclaim. In an amended answer and counterclaim defendant added a second count to his counterclaim in which he alleged that plaintiff filed a mechanic's notice of intention after the work was completed and paid for. Defendant alleged that plaintiff never served him with the mechanic's notice of intention. He also contended that plaintiff filed the notice maliciously, at a time when he knew it was ineffective, and that the filing slandered and clouded his title.
*20 The case was tried before Judge Cuff without a jury. At the conclusion of trial, the judge issued an oral decision in which she found that the work was completed on March 16, 1985 and involved the replacement of a well point with new piping only. The judge noted that several of the exhibits submitted by plaintiff into evidence had been obviously "doctored" or altered. She rejected the testimony of plaintiff's principal, Henry Peters, as incredible. She found that the contract price was $426, not $1,385, and that the entire payment had been made to plaintiff in full satisfaction of the work performed. She dismissed plaintiff's complaint. On the counterclaim, the judge awarded the $1,794 held in escrow released to defendant and entered a punitive damage award in the amount of $1,000. Plaintiff's motion for reconsideration pursuant to R. 1:7-4 was denied.

II
This is what the testimony at trial revealed. On March 12, 1985 the deceased defendant, Hanzula, contacted plaintiff's principal, Henry Peters, about a problem with the well located at a house owned by the defendants, Hanzula and Jovich. They did not live in the house. Peters testified that after inspecting the pump and tank, he quoted a price of $300 to $400 to fix the existing system and $1,200 to $1,300 for a new well, based on a flat price. Peters set forth the higher quote in writing. He later said that he knew from the first day that he would have to replace the well and that he never talked about a price of $300.
At defendants' request, on March 22, 1985, Peters went to defendants' house and started to dig to determine where the old well was located. Peters testified that he informed Hanzula that the well could not be repaired. Hanzula informed Peters that he would talk to Jovich and let Peters know if they decided to put in a new well. Peters testified that Hanzula refused to give him Jovich's number but that Hanzula himself spoke to *21 Jovich on the phone and then authorized Peters to put in a new well for between $1,200 and $1,300.
Peters began drilling a new well on Saturday, March 23. He testified that he drilled the new well 42 feet into the ground, pumped out water and connected the well. He also stated that on Monday, March 25, he and his men primed and oiled the pump. Peters calculated that he spent about seven to nine hours on the project on Friday, March 22, and eight and one-half hours on Saturday, March 23.
Peters testified that on March 23 he decided that the job would cost between $1,200 to $1,300. He thus prepared what was marked at trial as P-1, which purported to be an invoice for payment due. Peters claimed that the entire document was prepared on the same date, although the bottom portion was not placed on the document until after Hanzula signed it. This, he explained, was also why the writing was done with different colored pens.
Meanwhile, on March 22, 1985, Helen Peters, the wife of Henry Peters, filed a mechanic's notice of intention at the Monmouth County Courthouse in plaintiff's name against the property owned by defendants. She testified that the notice was filed because they were unable to get Jovich's telephone number from Hanzula. She also stated that she visited the site on the same day and observed a drilling rig and men working. Henry Peters testified that he gave a copy of the notice to Hanzula but not to Jovich; he understood that Hanzula would deliver it to Jovich. Peters contended that the notice was filed before all of the work was completed.
On March 27 Peters went to Hanzula's house to collect the remainder of the money he alleged was due. He testified that he was paid in "dribs and drabs" and stated that he received two payments of $50 in cash from Hanzula on March 23 and $250 from Hanzula on March 27. On Friday, March 29, he received $76 from Jovich for a total of $426. Peters said that on March 23, 1985 he told Hanzula that he owed a balance of *22 $1,240.79. According to Peters' own testimony, this balance would not have become due until Friday, March 29 when, he stated, he received his last payment of $76. The complaint claimed that $400, not $426, had been paid on account.
Jovich presented a completely different description of the events. He testified that he was informed on March 12 that it would cost approximately $300 to change the well point. About March 16, not March 22, plaintiff began work to install the new well point. Jovich remembered the day because it was the day before St. Patrick's Day. Peters came to the house with his son and a man named Gil. They did not have a drilling rig. He used water pressure to put in a new point at a depth of 28 feet. They pulled the old point out and sunk an identical point, finishing in approximately two hours. Peters then went to Hanzula and demanded payment of $385. Apparently, Hanzula was surprised that Peters was finished so quickly and paged Jovich on his beeper. When Jovich arrived, Hanzula gave Peters $200 and Jovich gave him $100. Jovich also borrowed $85 from his employee, Joseph Abadiotakis, to pay Peters, for a total payment of $385. There was an additional balance due of $68 or $76 for tax and extras. Several days later Jovich paid Peters the balance. Jovich testified that he never received a bill for any alleged balance due.
Abadiotakis substantially confirmed Jovich's testimony. He remembered that the point was replaced the day before St. Patrick's Day and that Peters and his men spent about two or three hours completing the job. He stated that Peters dug a hole 28 feet deep to insert a plastic casing. This took about 20 minutes. Abadiotakis connected the point to the house and primed the pump. He also testified that he lent defendant $80 on March 16 and that he recalled the defendants owed plaintiff a small balance of about $30 to $40.
Sometime after the well was repaired, Jovich contacted Peters with regard to purchasing a fitting. At that point, Peters told him that a lawyer had called him from Lakewood and *23 stated that he was filing a suit against Hanzula. Peters then asked Jovich if Hanzula owed Jovich any money, to which Jovich replied that he did not. No discussion took place with regard to any alleged amount due Peters Well Drilling.
Shortly before the property with the well was sold in 1987, Jovich was contacted by an attorney who informed him that plaintiff had placed a lien on the property. Jovich contacted Peters who told him that he had filed the lien to recover a balance due his son from Jovich. Defendant Jovich then directed his attorney to pay whatever amounts he owed to Peters' son. Jovich testified that Peters assured him that the lien did not involve the replacement of the well on the property owned by defendants.
At the time of the closing on the sale of the property, in January 1987, the matter had not been resolved and the lien had not been discharged. The sum of $1,794.12 was placed in an escrow account and held by plaintiff's attorney until the dispute could be resolved.
Judge Cuff found that work was performed on March 16, 1985 and involved the replacement of a well point with new piping only. She based this conclusion on her observation of the witnesses and an examination of the documents which she found to be "telling." She noted that D-2 and P-3, both of which were supplied by plaintiff, purported to be the same document yet P-3 obviously had been altered. On P-3, the amount of $1,385 appeared in a different color ink. Moreover, the numeral "one (1)" preceding the $385 figure on the top half of the document was in a different color ink. P-2 (which is also the top portion of D-2) was also "doctored," as there were obvious cross-outs of dates in a different color ink. The Judge found that the original dates were Monday, March 18; Tuesday, March 19; Wednesday, March 20; Thursday, March 21 and Friday, March 22. These dates were crossed out to reflect March 25, 26, 27, 28 and 29. The judge found that the original dates conformed with Jovich's testimony as to when he made *24 the final payment. P-2 was also altered in that "finally paid me at three thirty-five p.m. Friday [March 22]" was in blue ink and "on account" was in black ink.
Thus, the judge concluded that the original amount quoted was $385 plus extras, or a total due of $426, which defendants had paid in full. Plaintiff's complaint was dismissed. On the counterclaim, the Judge found that plaintiff had filed the mechanic's notice of intention after the work had been completed. She also found that the account had been paid in full about 35 minutes after the notice was filed. The mechanic's notice of intention was filed on Friday, March 22 at approximately 3 p.m.; P-2 stated that defendant finally paid plaintiff at 3:35 p.m. on March 22. Thus, she held that failure to discharge the notice was in bad faith. As noted, she awarded defendant-counter-claimant the sum held in escrow by plaintiff's attorney and levied punitive damages of $1,000 on the counterclaim.

III
The first claim is that defendant failed to establish "special damages," an essential element of an action for slander of title. We find that defendant did establish "special damages."
The judge found that the account was paid in full about 35 minutes after the mechanic's notice of intention was filed. She also found that the notice was filed after the work had been completed. She held that the failure to vacate the notice was in bad faith and constituted a slander on defendant's title. The judge did not make any specific findings of fact as to "special damages" but awarded the sum of $1,794.12, which had been held by plaintiff's attorney in escrow and which represented a portion of defendant's proceeds from the sale of the subject property.
The tort of slander of title has been defined in New Jersey as "a publication of a false assertion concerning plaintiff's title, causing plaintiff special damages." Lone v. Brown, 199 N.J. *25 Super. 420, 426, 489 A.2d 1192 (App.Div. 1985). Defendant must also have acted out of malice  either express or implied.
In Frega v. Northern New Jersey Mtg. Assn, 51 N.J. Super. 331, 143 A.2d 885 (App.Div. 1958), the plaintiffs contracted to have a house built and obtained the necessary construction loan from the defendant. After obtaining a permanent mortgage from a separate institution, the plaintiffs sought to have the construction mortgage cancelled of record. The defendant refused to do so unless the plaintiffs forwarded $150, or 2% of the construction loan amount, which had previously been paid by the plaintiffs. At the closing of the permanent mortgage, the plaintiffs paid the defendant $150, which cancelled the construction loan agreement, and then instituted suit for breach of contract and slander of title. At trial, the plaintiffs were awarded $250 on the contract count, designated as $150 for cancellation of the lien and $100 for inconvenience. Count two, in which the plaintiffs demanded punitive damages, was dismissed. On appeal, the defendant urged that since the plaintiffs were awarded compensatory damages on their contract action and since the slander of title action (count two) was dismissed, punitive damages were not recoverable. We held that the trial judge erred in dismissing the slander of title count and remanded the matter. Id. at 342, 143 A.2d 885. We held that the plaintiffs had spelled out, in count two, an action for slander of title or "the false assertion that complainant's land was encumbered by the mortgage to the damage of the plaintiffs." Id. at 337, 143 A.2d 885. We cited a series of cases in which defendants had asserted a lien or other right upon plaintiffs' properties to obtain a pecuniary benefit to which they knew they were not entitled. This, we held, was slander of title and punitive damages could properly be awarded.
We also rejected the defendant's argument that since count two (slander of title) sought only punitive and not compensatory damages, it was properly dismissed. We noted that where a person has an alternative right to sue for a breach of contract or for a tort, the fact that the act constituted a breach of *26 contract does not preclude the award of punitive damages if the action is brought for the tort. Id. at 399, 143 A.2d 885, citing Restatement of Torts, § 908, comment (b) at 555. We held that at least $150, the amount paid to cancel the mortgage, was properly awarded as compensatory damages and could be included within the slander of title count. Judge Gaulkin stated:
It seems to us that at least $150 of the $250 awarded as damages on the first count would more properly have been awarded as compensatory damages on the second count. After the trial judge had dismissed the second count, and the defendant rested without offering any evidence, the judge said: "The court will enter a directed verdict in favor of the plaintiffs and against the defendant for the sum of $250  $150 for the amount demanded for the cancellation of the lien which the court feels was improperly demanded, and an additional $100 for the inconvenience and time suffered by the defendants in the removal of this lien and in securing another mortgage." [Frega, 51 N.J. Super. at 339, 143 A.2d 885.]
We concluded that even though the slander of title count did not seek compensatory damages, this did not prevent the court from awarding both compensatory and punitive damages. The action for slander of title was therefore improperly dismissed.
Similarly, in the case before us, Judge Cuff awarded defendant the money held in escrow, $1,794.12. While, unlike the situation in Frega, defendant did not actually pay plaintiff this sum at closing, the money was held by plaintiff's attorney in his escrow account and was not available to defendant. In fact, the escrow agreement, dated January 15, 1987, specifically provided that the
[s]um of 1,674.12 plus 120.00 to be held in escrow by Carl Swanson until July 15, 1987 pending ... Sellers right to litigate the monies allegedly due to Peters Well Drilling Co. In the event no court resolution or Settlement of the dispute occurs within or before 7/15/87 escrow agent shall be free to release monies to Peters Well Drilling Co. to obtain discharge of mechanics notice of intention.
The agreement forced defendant to litigate the disputed sum or forfeit it. If defendant had simply paid plaintiff the sum at the time of closing and then litigated the matter, the sum would surely have been considered "compensatory damages," as in Frega.
This view is further supported by the Restatement Torts 2d, § 633 at 355 (1977), which defines a "pecuniary loss" in an *27 action for "disparagement," including slander of title, as follows:
(1) The pecuniary loss for which a publisher of injurious falsehood is subject to liability is restricted to
(a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and
(b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement.
(2) This pecuniary loss may be established by
(a) proof of the conduct of specific persons, or
(b) proof that the loss has resulted from the conduct of a number of persons whom it is impossible to identify.
Usually the pecuniary loss is occasioned by the loss of a sale to a particular purchaser. Restatement Torts 2d, § 633(1)(a), comment c at 355 (1977). The "disparaging matter may prevent a sale by causing an intending purchaser to withdraw an offer already made or otherwise to terminate negotiations that were reasonably certain to result in a sale." Id. at 355-356. However, pursuant to § 633(1)(b) of the Restatement 2d, the loss can also include damages incurred in the clearing of the cloud on the title. In the case before us, although the proofs establish that the mechanic's notice of intention did not prevent the closing, this was only because Jovich agreed to enter into the escrow agreement. The agreement could not be revoked unilaterally by either party; defendant either had to litigate or reach a new agreement with plaintiff. Sunset Beach Amusement Corp. v. Belk, 31 N.J. 445, 451, 158 A.2d 35 (1960). Defendant incurred damages in an effort to remove the cloud on his title. We could not sensibly preclude defendant from recovering damages that he incurred in removing the lien which facilitated the sale, but provide that he could have recovered only if he lost the sale by sitting back and refusing to escrow money from the closing. Therefore, as in Frega, defendant has established a loss. The award of the monies held in escrow for defendant thus constituted compensatory or "special damages."
*28 Plaintiff relies heavily upon Stiles v. Kuriloff, 6 N.J. Misc. 271, 141 A. 314 (Cty.Ct. 1928). This reliance is misplaced. Frega states that the result reached in Stiles may be erroneous but does not set forth the reason for this conclusion. Frega, 51 N.J. Super. at 338, 143 A.2d 885. In Stiles, the plaintiff alleged that a prospective purchaser of a farm had refused to take title after discovering a lis pendens filed by the defendant. Id. 6 N.J. Misc. at 271, 141 A. 314. The plaintiff sued for what seemed to be slander of title.[1]Ibid. The court said that there was nothing to indicate that the contract of sale was not enforceable by reason of the defendant's filing a lis pendens and that even if it was enforceable, the plaintiff did not suffer damages. Id. at 272, 141 A. 314. In the case before us, as in Frega, the damages did not stem from the loss of a sale, but rather from an extorted payment into escrow of the wrongfully demanded sum.
Plaintiff, in its defense, claims that a party cannot claim "special damages" sufficient to establish a slander of title action for monies paid under duress if he has a quick, inexpensive remedy to remove the cloud on title. Plaintiff also relies upon Frega's citation to Plainfield Bldg. & Land Co. v. N.J., etc. Title Co., 14 N.J. Super. 384, 82 A.2d 439 (App.Div. 1951), in which the plaintiff recovered judgment at the trial level for certain monies paid to the defendant as mortgage fees. We reversed and held that if a person without fraud or coercion pays a demand which is not enforceable against him, the payment is voluntary and cannot be recovered. Id. at 388, 82 A.2d 439.
Plaintiff's reliance upon Plainfield is misplaced. In Frega, we noted the Plainfield court's conclusion that even if the plaintiff there proved actual malice, it did not prove special damages. 51 N.J. Super. at 340-341, 143 A.2d 885. We distinguished *29 the situation in Frega, where the lending institution did not offer the slightest justification for the demand of $150 and where the plaintiff had neither the time nor the resources to enforce his rights, from that in Plainfield where plaintiff had adequate funds and time to "go into Chancery for relief" and to challenge the demand for the monies. 51 N.J. Super. at 341, 143 A.2d 885. Moreover, Plainfield is also distinguishable because, in that case, we found insufficient evidence to justify the inference that the defendant wrongfully threatened to refuse to cancel the mortgage there in issue. Id. 14 N.J. Super. at 388, 82 A.2d 439. Here, the trial judge found that plaintiff's filing of the mechanic's notice of intention after the work had been completed and its failure to discharge it, even though the account was paid in full 35 minutes after the notice was filed, was in bad faith.
Peters also admitted that he did not serve Jovich with a copy of the notice but instead relied upon his partner, Hanzula, now deceased, to deliver it to him. In fact, when Jovich finally became aware of the notice, shortly before the closing, Peters informed him that the notice concerned other monies owed to Peters' son and denied that the notice concerned work on the well on the subject property. Not only was the notice fraudulently filed, but the claim it embodied admittedly had nothing to do with the subject property. Jovich had no alternative but to place the disputed sums into an escrow account to facilitate the closing. In short, Plainfield, even if correct, is distinguishable.
Plaintiff's final argument is that Jovich has no action for slander of title because N.J.S.A. 2A:44-116 represents a legislative decision to preclude the courts from awarding damages for an improper refusal to discharge a mechanic's notice. N.J.S.A. 2A:44-116 provides:
When a mechanic's notice of intention has been filed under section 2A:44-71 of this Title and the claim for which the notice was filed has been paid, satisfied or settled by the parties or abandoned by the party filing the notice, the party filing such notice shall file with the proper county clerk a certificate duly *30 acknowledged or proved, directing the proper county clerk to discharge the mechanic's notice of intention of record, which certificate shall contain:
a. The date of filing the mechanic's notice of intention;
b. The file number indorsed thereon;
c. The name of the owner of the land named in the notice;
d. The location of the property; and
e. The name of the person for whom the labor was performed or materials furnished.
If the claimant shall fail or refuse to file such certificate, then upon application by any proper party in interest, the Superior Court or the County Court of the proper county, upon 5 days' written notice to the claimant, to be served upon him in the same manner as provided by section 2A:44-79 of this Title, or upon satisfactory proof that the claimant cannot be served, may, upon good cause being shown, order the mechanic's notice of intention discharged.
When a mechanic's notice of intention has been filed pursuant to section 2A:44-71 of the New Jersey Statutes, and it is alleged that the claimant improperly refuses or neglects to file such certificate, upon application in the manner aforesaid, the Superior Court or the County Court of the proper county may inquire into the facts in a summary way, and upon good cause being shown, order the mechanic's notice of intention discharged, and may require the claimant to pay the costs and reasonable attorney's fees. If at the hearing it shall appear that the claimant willfully refused to honor a written request to file such certificate after a demand therefor, served upon the claimant 15 or more days after the satisfaction of the claim and 10 or more days prior to the application to the court for an order to discharge the notice, the court may assess additional costs against the claimant and in favor of the applicant in the amount of $50.00.
In Heljon Management Corp. v. Di Leo, 55 N.J. Super. 306, 150 A.2d 684 (App.Div. 1959), we addressed a similar issue. The defendants filed a mechanic's lien against plaintiff's property. The plaintiff instituted suit to discharge the lien and to recover damages for slander of title. The plaintiff filed a motion for summary judgment alleging that the defendants failed to serve written notice of the lien and that therefore, pursuant to N.J.S.A. 2A:44-116, the lien should be discharged. The defendants claimed that they gave the plaintiff notice. Summary judgment was entered in favor of the plaintiff on its count to discharge the lien and the defendants appealed. On appeal, the defendants argued that the trial judge lacked jurisdiction to grant summary judgment pursuant to N.J.S.A. 2A:44-116. We held:

*31 The cited statute provides that when a mechanics' notice of intention has been filed and the claim has been paid, satisfied, settled, or abandoned, and the lien claimant fails or refuses to file a certificate directing the county clerk to discharge the notice, the court may, on application and "in a summary way," order the notice discharged. This statute has no application to the present case since, by defendants' own admission, their claim has not been paid, satisfied, settled or abandoned. Sharav v. Scott, [37 N.J. Super. 224, 117 A.2d 175 (App.Div. 1955)] merely holds that the summary procedure provided for by N.J.S. 2A:44-116 does not authorize the court, whose jurisdiction has been invoked to have the notice discharged, to render a summary judgment as to other aspects of the claim. [55 N.J. Super. at 313-314, 150 A.2d 684.]
In this case, as in Heljon, the mechanic has argued that the claim was not paid, satisfied, settled or abandoned. In fact, plaintiff filed this very complaint to recover the alleged monies due. During the trial of this claim Judge Cuff determined that plaintiff filed the mechanic's notice of intention even though the work already had been completed and then in bad faith neglected to discharge it. Plaintiff's reliance upon N.J.S.A. 2A:44-116, in support of its contention that defendant's failure to use this summary remedy precludes recovery of damages for slander of title, is unpersuasive.[2]

IV
Plaintiff next urges that the filing of a mechanic's notice of intention is absolutely privileged and cannot form the basis for a slander of title action. We disagree, with regard to the facts of this particular case.
Plaintiff relies principally upon Lone v. Brown, 199 N.J. Super. at 428, 489 A.2d 1192, where we held that the filing of a lis pendens was absolutely privileged and could not form the predicate for a slander of title action. Cf., Westfield Dev. v. *32 Rifle Inv. Assoc., 786 P.2d 1112, 1114 (Colo.Sup.Ct. 1990) (notice of lis pendens enjoys qualified privilege only). In Lone, we initially noted that:
Even though New Jersey recognizes slander of title as a viable cause of action, the question presented is whether defendant enjoys immunity. It is well established that statements, written or oral, made by judges, attorneys, witnesses, parties or jurors in the course of judicial proceedings, which have some relation thereto, are absolutely privileged from slander or defamation actions, even if the statements are made with malice. [Id. 199 N.J. Super. at 426, 489 A.2d 1192; citations omitted.]
We held that pleadings and a notice of appeal were part of a judicial proceeding and privileged. Id. at 427, 489 A.2d 1192. We also held that the filing of a notice of lis pendens constituted a "republication of some of the essential information contained in the complaint and notice of appeal." Id. at 428, 489 A.2d 1192. We found that since the lis pendens related to the pending judicial proceeding, it would be "incongruous indeed to say that the complaint and notice of appeal are privileged but the notice of lis pendens filed in the same pending judicial proceeding, designed to give notice and preserve the status quo, would not also be privileged." Ibid.
By analogy, plaintiff here urges that a mechanic's notice of intention is also privileged, although plaintiff gives no authoritative support for this contention. No New Jersey cases have ruled on whether the filing of a mechanic's notice of intention is immune from a claim for slander of title. Nor have any New Jersey cases upheld an award of damages for slander of title based upon the filing of a mechanic's lien. This is a case of first impression.[3]
In accordance with the provisions of the mechanic's lien law, N.J.S.A. 2A:44-66 to -124, a party must first file a notice of intention prior to performing labor or furnishing material. N.J.S.A. 2A:44-71. Within four months after the performance *33 of the last labor or the last materials furnished, a lien claim must also be filed. N.J.S.A. 2A:44-91. To enforce this lien an action in Superior Court must be commenced within the same four-month time period. N.J.S.A. 2A:44-98. Summons must issue within five days after filing the complaint and the action must be diligently prosecuted. N.J.S.A. 2A:44-99.
As suggested in Lone v. Brown, the filing of a civil complaint to enforce a mechanic's lien is regarded as a part of a judicial proceeding and thus its contents are absolutely privileged from slander or defamation actions, even if the statements are made with malice. The question here is whether the filing of a notice of intention alone enjoys that same status. We hold that under the facts presented in this case, the notice was not filed as a prelude to or a part of a judicial proceeding and therefore does not enjoy immunity.
As is the case with a lis pendens, N.J.S.A. 2A:44-72 does not require that the notice of intention be in affidavit form. However, unlike a lis pendens, the filing of a notice of intention does not contain a "republication" of the essential elements of a complaint. In fact, N.J.S.A. 2A:44-72 provides that:
The notice required by section 2A:44-71 of this title shall be signed by or on behalf of the person for whose benefit it is filed and shall contain:
a. The name of each person who, within 10 days prior to the filing, shall have been the owner of record of the estate in the land to which the lien is to attach;
b. A description of the land sufficient to identify it;
c. The name of the one for whom the labor is to be performed or to whom the materials are to be furnished; and
d. The full name and address of the one for whose benefit the notice is filed, and the name of any one whose signature, when affixed to any instrument relating to such right of lien, shall be binding on the one for whose benefit the notice is filed.
At the time the notice of intention is usually filed, the amount of the claim, if any, has not yet been determined since the work has not been completed. The purpose of the filing of the notice of intention is not, as in the case with a lis pendens, to give notice of a legal action affecting real estate, but rather to give notice to the owner that the property could become liable for *34 the labor provided or materials used in improving the property. Apex Roofing Supply Co. v. Howell, 59 N.J. Super. 462, 467, 158 A.2d 49 (App.Div. 1960). Thus, if the homeowner pays his immediate contractor, he does so at the peril of finding himself with a lien against his property which can only be lifted by paying the noticed claim. Id. at 467-468, 158 A.2d 49.
In the case before us, plaintiff did not perfect its claim. It only filed a notice of intention,[4] which, as the judge found, was based on a fraudulent billing for work not performed. No lien claim was ever filed nor was a complaint filed within four months after the completion of the work. In fact, the complaint in this case was not filed until June 2, 1987, more than two years later, and makes no mention at all of the mechanic's notice. In such a situation the rationale for imposing the absolute privilege accorded to judicial proceedings is absent. The notice was never perfected and never could have become a part of a suit for enforcement pursuant to N.J.S.A. 2A:44-98. If, however, plaintiff had filed a timely notice of intention, a lien claim, and a court action to enforce it, the filing of the notice would be considered a part of a judicial proceeding and would be privileged.
We contrast the case before us with a recent Virginia case, Donohoe Const. v. Mount Vernon Associates, 235 Va. 531, 369 S.E.2d 857 (1988), where the court held that the filing of a memorandum of mechanic's lien is a "judicial proceeding" entitling the claimant to the defense of absolute privilege in a suit for slander of title. Initially, the court noted that "[t]he reason for the rule of absolute privilege in judicial proceedings is to encourage unrestricted speech in litigation." Id. 369 S.E.2d at 860. See also Frank Pisano & Associates v. Taggart, 29 *35 Cal. App.3d 1, 105 Cal. Rptr. 414 (Cal.Ct.App. 1972) (filing of a claim of mechanic's lien in conjunction with a judicial proceeding to enforce it is absolutely privileged). The Virginia mechanic's lien statute is somewhat different from New Jersey's. In Virginia, the claimant must first file a memorandum which must contain:
... the names of the owner of the property sought to be charged, and of the claimant of the lien, the amount and consideration of his claim, and the time or times when the same is or will be due and payable, verified by the oath of the claimant.... Code § 43-4. [369 S.E.2d at 861.]
The memorandum in Virginia, unlike the initial notice in New Jersey, must contain the amount of the claim. The memorandum is also distinguishable because:
The claimant must appear and make oath before a notary public (or some other official authorized to administer an oath) that the owner is justly indebted to the claimant in the amount and for the consideration stated in the memorandum. Code § 43-5. Significantly, the taking and certifying of an acknowledgement by a notary public is a judicial act. [Ibid.; citations omitted.]
Thereafter, to enforce the lien the claimant must file suit within six months from the time when the memorandum was recorded or 60 days from the time the work was completed. Thus, the Virginia Supreme Court in Donohoe held:
Applying the broad rule enunciated in Penick [v. Ratcliffe], 149 Va. [618] at 627-28, 140 S.E. [664] at 667 [1928] we conclude that the filing of the memorandum of mechanic's lien constitutes a judicial proceeding. Accord Frank Pisano & Assoc. v. Taggart, 29 Cal. App.3d 1, 25, 105 Cal. Rptr. 414, 430 (1972). As previously noted, it is a prerequisite to a suit to enforce. For a claimant to obtain the remedy provided by statute, he must perfect his lien and, thereafter, sue to enforce it. The two proceedings are inseparable. [Ibid., emphasis in original.]
In the case before us, had plaintiff, as did the claimant in Donohoe, perfected its lien and sought to enforce it by suit, the contents of the notice would be absolutely privileged no matter what the merits, limited only by the principle that the "words spoken or written in [the] judicial proceeding" must be "relevant and pertinent to the matter under inquiry...." Id. 369 S.E.2d at 860. But this is not our case. In this case, plaintiff simply filed a fraudulent notice of intention which required defendant to escrow money to clear his title. The lien was filed *36 after the work was completed. No attempt to perfect it was made. No suit in reliance upon it was ever commenced. Under N.J.S.A. 2A:44-71 and 98, it could never have become part of a bona fide judicial proceeding to enforce. Under this narrow circumstance, the absolute privilege does not apply.
We conclude that simply filing a fraudulent mechanic's notice of intention is not absolutely privileged as part of a judicial proceeding. This fraudulent gesture did not rise to the level of a judicial proceeding.

V
The remainder of plaintiff's contentions on this appeal are clearly without merit and warrant no discussion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] Note, Lone v. Brown, 199 N.J. Super. at 428, 489 A.2d 1192, precludes a suit for slander of title based upon the wrongful filing of a lis pendens.
[2] In distinguishing the facts of this case from those cases where the summary remedy provided by N.J.S.A. 2A:44-116 would apply, i.e., where there is no dispute that the underlying debt has been satisfied, we do not mean to imply that the summary proceeding remedies provided by the statute are exclusive and would preclude a count for slander of title in such cases. We leave the resolution of that issue for another day when these facts are presented for decision.
[3] In Heljon Management Corp. v. Di Leo, plaintiff's count for slander of title was dismissed but no reasons were expressed. 55 N.J. Super. at 309, 150 A.2d 684.
[4] Defendant alleges that he did not receive personal service and that the facts adduced at trial show that the notice was filed after the work was completed and not before. Thus, notice violated both N.J.S.A. 2A:44-71 (service upon owner) and N.J.S.A. 2A:44-71 (notice must be filed before performing labor or furnishing material).