**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2452-22

PATRICK KELLY and
ROSALIND KELLY,

     Plaintiffs-Respondents/
     Cross-Appellants,

v.

HRISTO TANCEVSKI and
ANICA TANCEVSKI,

     Defendants-Appellants/
     Cross-Respondents.

_____

     Submitted October 30, 2024 – Decided February 5, 2025

     Before Judges Marczyk, Paganelli and Torregrossa-O'Connor.

     On appeal from the Superior Court of New Jersey, Chancery Division, Sussex County, Docket No. C-000044-20.

     Weiner Law Group LLP, attorneys for appellants/cross-respondents (Steven R. Tombalakian, of counsel and on the briefs).

Gruber, Colabella, Liuzza, Thompson & Hiben attorneys for respondents/cross-appellants (Chris H. Colabella, of counsel and on the brief; Racquel G. Hiben, on the briefs).

PER CURIAM

Defendants Hristo Tancevski and Anica Tancevski (Tancevskis) appeal from a March 8, 2023 trial court order, entered following a bench trial, denying their counterclaims for slander of title and a permanent easement over plaintiffs' Patrick Kelly and Rosalind Kelly (Kellys) property. In addition, the Tancevskis and Kellys both appeal the trial court's temporary easement remedy. Because the trial court's factual findings are adequately supported by the credible evidence in the record, and we conclude there was no error in the court's application of the relevant legal principles, we affirm.

I.

This matter involves a property boundary dispute between neighbors, the Kellys and Tancevskis. The Kellys filed a complaint against the Tancevskis alleging the driveway from the Tancevskis' property encroached onto the Kellys' property. The Kellys alleged the driveway encroachment caused a nuisance and sought its removal. Along with filing the complaint, the Kellys' lawyer filed a notice of lis pendens on the Tancevskis' property that stated there was a lawsuit,

"the general object of which [wa]s: . . . [t]o remove the encroachment of [the Tancevski]s' driveway upon the property of" the Kellys.

The Tancevskis filed an answer with affirmative defenses and counterclaims. Included within the affirmative defenses, the Tancevskis alleged the Kellys were "barred from recovery" under N.J.S.A. 2A:14-6 and N.J.S.A. 2A:14-7 and that the Tancevskis "own[ed] absolutely, and [we]re entitled to the title and possession of the real property upon which their driveway [wa]s situated under the [d]octrine of [a]dverse [p]ossession."

In addition, the Tancevskis pleaded counterclaims. As relevant here, the counterclaims included a claim that the Tancevskis held title to that portion of the Kellys' property under the driveway encroachment, through adverse possession. Also, the Tancevskis claimed slander of their title because of a pre-litigation communication from the Kellys' attorney to the Tancevskis' contract buyer concerning the driveway encroachment dispute.

The trial court conducted a two-day trial. The Kellys presented testimony from their landscaper and Patrick. The Tancevskis offered the testimony of their immediate predecessor in title and Hristo. In addition, the trial court admitted, without objection, the Kellys' thirty-seven trial exhibits and the Tancevskis' thirty-eight trial exhibits into evidence.

3

In the trial court's nineteen-page written opinion, the judge found that all witnesses were credible. Since the judge thoroughly detailed each attribute of the witnesses' testimony that led to his credibility conclusions, there is no need for us to repeat them here.

The Kellys purchased their property in 1986 and moved into the house in December 1987. The Kellys' survey from the purchase "did not indicate any encroachments on [their] property." In fact, the Kellys "were unaware of any encroachments until 1995" when they were approached by one of the Tancevskis' predecessors in title regarding "a proposed easement agreement." The Tancevskis' predecessor advised that a "portion of the[ir] driveway encroached" on the Kellys' property. Patrick testified that no easement agreement was reached because he preferred a property line adjustment.

The predecessor sold the Tancevski property to another. Patrick discussed the driveway encroachment with the new owner. He did "not make an issue of the encroachment" or tell the new owner that they "could not use the area of the driveway." Patrick suggested that the encroachment could be addressed "if either of the parties sold their property or refinanced their property."

In 1999, Patrick received a proposal from the new owner's attorney. The new owner was in the process of selling the property and proposed "a property

4

line adjustment to address the driveway encroachment." However, before he could discuss the proposal with the new owner, the property was sold.

The new owner sold the property to the Tancevskis' immediate predecessor in title. Patrick and this new owner had discussions about the driveway encroachment. According to Patrick, the Kellys permitted the new owner "to use the entire driveway but did not transfer or give up [their] legal ownership right to the disputed area of the property."

In 2005, Patrick learned that the Tancevskis had purchased the property. Patrick spoke to Hristo and the "conversation was similar to all of the prior conversations with [prior] owners relat[ing] to the encroachment and entering into a property line adjustment to resolve the encroachment issue."

Hristo recalled "that shortly after moving in he met [Patrick] and had a conversation regarding the encroachment. [He] recalled that [Patrick] proposed to make a property line adjustment if either of the parties sold or refinanced their properties." However, Hristo "did not believe that the offer was fair."

In September 2019, Hristo and Patrick again discussed "a property line adjustment." The Tancevskis were in the process of listing the property for sale. Hristo rejected Patrick's offer because of concerns with the Tancevskis' septic system. Instead of selling, the Tancevskis leased the property.

5

In 2020, Hristo informed Patrick that the Tancevskis were again selling the property. Patrick "raised the issue of the property line adjustment" but the Tancevskis "refused to enter into any . . . agreement." The Kellys retained an attorney to resolve the property line issue.

According to the judge's decision, on October 30, 2020, the Tancevskis entered into a contract for the sale of their property. The Kellys' attorney "sent correspondence to the realtors and attorneys regarding the dispute over the driveway encroachment." "On November 13, 2020, the buyer's attorney advised that they were pulling out of the deal because of the dispute over the driveway." The Kellys' attorney filed the complaint on November 19, 2020, and a lis pendens on the Tancevskis' property on November 25, 2020. Hristo testified that he never asserted that he owned the driveway encroachment onto the Kellys' property until the complaint was filed. In the spring of 2021, the Tancevskis relisted the property for rent. They executed a lease with a tenant in June 2021.

In his testimony, Patrick "opined that if [the Tancevskis] stopped using the area of the driveway that encroached on [the Kelly]s' property that there would still be sufficient frontage for the driveway pursuant to the applicable . . . ordinance." Patrick "testified that he did not obtain an expert report

6

indicating that it was usable." Instead, Patrick "relied solely on his own measurements and his understanding of the applicable ordinance."

In the written opinion, the judge concluded that: (1) the Kellys' claim for nuisance must be dismissed because—having determined the nuisance was a permanent one—the complaint was filed more than six years after they were "first made aware of the encroachment in 1995";[1] (2) the Tancevskis' counterclaim for adverse possession must be dismissed because the Tancevskis never took "the position that they were the owners of the disputed" driveway encroachment until the Kellys filed the complaint, and the Tancevskis could not establish that their use of the area was "hostile." To the contrary, Patrick testified regarding repeated conversations through the years with multiple owners of the Tancevskis' lot regarding adjusting the property line and that the Kellys permitted the Tancevskis and their predecessors to continue using the encroachment; and (3) the Tancevskis' counterclaim for slander of title resulting from the Kellys' filing of the lis pendens must be dismissed because the

---

[1] N.J.S.A. 2A:14-1(a) provides, "[e]very action at law for trespass to real property, for any tortious injury to real . . . property . . . shall be commenced within six years next after the cause of any such action shall have accrued."

Tancevskis failed to establish damages: (a) the lis pendens was filed after the contract for sale of the Tancevskis' property was canceled; (b) there was no support for Hristo's testimony that the lis pendens was "responsible for any lost rent"; and (c) "there [wa]s no support for an award of attorneys' fees related to counsel's representation of the [Tancevskis] in this matter."

Despite finding that neither party established their causes of action, the trial judge concluded "there [wa]s the potential that both parties' properties would have marketability issues." Therefore, invoking his equitable authority, the judge found "that [a] temporary easement [wa]s necessary to benefit both properties." The judge imposed "[a] temporary easement permitting the encroachment of the driveway onto [the Kelly]s' property . . . [requiring it] to remain in place until the repair or replacement of the driveway at" the Tancevskis' property. Thereafter, "[u]pon the repair or replacement of the driveway the easement [would] terminate[], and the owner of [the Tancevski property] is to construct the driveway so that it is in compliance with the property line and does not encroach on" the Kellys' property.

## II.

On appeal, the Tancevskis argue the trial court erred in declining to grant: (1) a permanent easement over the Kellys' property and (2) legal remedies and

compensation for the Kellys' "blatant misuse" of the lis pendens. As to the remedy imposed, the Tancevskis argue for a permanent easement, not a temporary easement, and claim the requirement to remove the driveway is "unworkable." In the Kellys' cross-appeal, they argue the trial court erred in failing to set a time frame in the temporary easement by which the Tancevskis are to replace or repair the driveway.

In conducting our review, we apply a deferential standard to a "trial court's determinations, premised on the testimony of witnesses and written evidence at a bench trial." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). "Findings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974). Therefore, "our appellate function is a limited one: we do not disturb the factual findings . . . of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)).

However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special

deference."  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

A.

The Tancevskis argue the trial judge erred by exclusively focusing on the counterclaim for adverse possession and omitting the "claims and arguments seeking a permanent easement to allow the driveway encroachment to remain as located."

The Tancevskis contend the evidence confirmed that the Kellys' "efforts to cause removal of the driveway encroachment well surpassed the twenty [-]year limitations period as provided by the . . . ejectment statutes,[2] such that the only legal or equitable remedy available, absent adverse possession, was the issuance of a permanent easement to allow the driveway to remain where located."

However, the Tancevskis provide no legal basis for the acquisition of an easement in this manner.  "Easements may be created in one of the following ways:  by implication; by an express conveyance; or by prescription."  Leach v.

_____

[2]  N.J.S.A. 2A:14-6 provides, "[e]very person having any right or title of entry into real estate shall make such entry within [twenty] years next after the accrual of such right or title of entry, or be barred therefrom thereafter."  N.J.S.A. 2A:14-7 provides, "[e]very action at law for real estate shall be commenced within [twenty] years next after the right or title thereto, or cause of such action shall have accrued."

Anderl, 218 N.J. Super. 18, 24 (App. Div. 1987). Here, there is no express easement. Nor is there an easement by implication—created "where an owner of land conveys to another an inner portion thereof, which is entirely surrounded by lands owned by the conveyor" or where a "conveyee is found to have a right-of-way across the retained land of the conveyor for ingress to, and egress from, the landlocked parcel." Id. at 25 (citation omitted) (internal quotation marks omitted).

"To establish an easement by prescription, a claimant must show a use which is adverse or hostile, exclusive, continuous, uninterrupted, visible and notorious . . . ." Mandia v. Applegate, 310 N.J. Super. 435, 443-44 (App. Div. 1998). "[T]he proponent of an easement by prescription must prove an adverse use of land . . . for at least thirty years." Yellen v. Kassin, 416 N.J. Super. 113, 120 (App. Div. 2010). Thus, for the same reason the Tancevskis' claim for title through adverse possession fails, the claim for an easement by prescription fails—the use was not hostile.

Further, we reject the Tancevskis' suggestion that the Kellys "waited more than [thirty-three] years to initiate efforts to eliminate the encroachment." The Tancevskis' suggestion sets the earlier accrual date for the Kellys' cause of action at the time of their acquisition or occupancy of the property.

11

However, the judge found the Kellys "were first made aware of the encroachment in 1995." The judge even considered "[g]iving [the Kellys] the benefit of the doubt that they did not realize there may be a dispute over the encroachment until . . . 1999" when the Tancevskis' immediate predecessor purchased the property. We have no reason to disturb the judge's finding that the Kellys' cause of action accrued in the later years. Thus, the Kellys' filing in 2020 was within the thirty-year time frame and precludes a prescriptive easement.

Further, the Tancevskis incorrectly assert that after the expiration of the twenty-year time frame provided in the "ejectment statutes," the Kellys would be without a cause of action, and therefore, "the only legal and equitable remedy available . . . was the issuance of a permanent easement to allow the driveway to remain where located."

The Tancevskis' argument ignores N.J.S.A. 2A:35-1 and the New Jersey Supreme Court's decision in J & M Land Co. v. First Union National Bank ex rel. Meyer, 166 N.J. 493 (2001).

N.J.S.A. 2A:35-1 provides, "[a]ny person claiming the right of possession of real property in the possession of another, or claiming title to such real

property, shall be entitled to have his rights determined in an action in the Superior Court."

In J & M, the Court "address[ed] what, if any, impact the twenty-year statutes have on proceedings conducted under N.J.S.A. 2A:35-1 after the passage of twenty years." 166 N.J. at 520. The Court held:

> a landowner can elect to pursue an action in the Superior Court claiming title to real property or claiming the right to possession in lieu of an ejectment action, Gretkowski v. Wojciechowski, 26 N.J. Super. 245, 247 (App. Div. 1953), even when the wrongful possessor has been in possession for twenty years or more. Stump [v. Whibco,] 314 N.J. Super. [560,] 565, 582 [(App. Div. 1998)]. We hold, therefore, that because N.J.S.A. 2A:35-1 contains no specified time in which proceedings must be instituted thereunder, its practical effect is to super[s]ede those provisions in N.J.S.A. 14-6 and -7 that create repose for common-law ejectment actions after twenty years.
>
> [Id. at 521.]

Therefore, the Kellys' failure to file a complaint within twenty years would not have precluded the filing under N.J.S.A. 2A:35-1. See ibid. Thus, the Tancevskis' argument, that they be granted a permanent easement almost as an inevitable by-product of the Kellys' failure to file within twenty years, is misplaced.

A-2452-22

We conclude the trial court did not abuse its discretion in denying the Tancevskis a permanent easement.

## B.

The Tancevskis argue "[t]he trial court was wrong to not acknowledge not only the blatant misuse of [the] lis pendens, but to not award any legal remedies to [the Tancevskis] to compensate them for the needless damage [the Kellys] caused."[3]  The Tancevskis rely on the trial court's finding that the lis pendens was "impermissible" and contend "[a]s such, [the Kellys] slandered [their] title." The Tancevskis assert that the lis pendens effectuated an "impermissible clouding of title" that "prevented [them] from realizing the benefits of their investment" and they "should have been awarded fair and reasonable compensation for the financial damage inflicted upon them, including their $18,000 in legal fees" incurred to the point the lis pendens was discharged.

---

[3]  In their counterclaim, the Tancevskis pled the Kellys' attorney's communication—before filing the complaint and the lis pendens—with their contract buyer caused the cancellation of the contract and tenant's non-renewal and resultant financial damages.  The Tancevskis have not made this argument on appeal and it is deemed waived.  See N.J. Dep't of Envt'l Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) ("An issue that is not briefed is deemed waived upon appeal.").

In addition, the Tancevskis argue the "lis pendens was not part of a judicial proceeding," and thus the Kellys are "depriv[ed] . . . of the privileges available under the statute."

To establish the tort of slander of title, the Tancevskis are required to establish the Kellys "falsely published an assertion concerning . . . title"; "which caused special damages"; and that the Kellys "acted out of malice, which was express or implied." Lone v. Brown, 199 N.J. Super. 420, 426 (App. Div. 1985).

To establish a false publication concerning title, the Tancevskis rely on the Kellys' "impermissible" filing of the lis pendens. However, the Tancevskis fail to address how the Kellys' assertion in the lis pendens was false. The lis pendens merely stated that a lawsuit had been filed and the Kellys sought "to remove the encroachment of [the Tancevskis'] driveway upon the property of" the Kellys. There is nothing false in the lis pendens, it was simply deemed impermissible because the Kellys' lawsuit was not filed "to enforce a lien upon real estate or to affect the title to real estate or a lien or encumbrance" on the Tancevskis' property.[4] See N.J.S.A. 2A:15-6. Under these circumstances, the Tancevskis failed to establish a false publication concerning the property.

---

[4] During the course of the litigation a different judge determined the Kellys

In considering special damages, we have noted that "[u]sually the pecuniary loss is occasioned by the loss of a sale to a particular purchaser." Peters Well Drilling Co. v. Hanzula, 242 N.J. Super. 16, 27 (App. Div. 1990). However, we have noted "the loss can also include damages incurred in the clearing of the cloud on the title." Ibid.

As to damages, the trial court found the Tancevskis failed to sustain their burden. The judge found the lis pendens was filed after the contract to sell was canceled, so it could not have been the reason for the contract's cancellation. Further, the trial court found there was no support for the Tancevskis' assertion that they lost rental income because of the filing. Lastly, the judge found "there [wa]s no support for an award of attorneys' fees related to counsel's representation of the [Tancevskis] in this matter." Given our deference to the

---

failed to provide any evidence to the court at this juncture with a right to cloud title on the Tancevski[s'] property. There is nothing in the record to suggest [the Kellys] have any interest on the Tancevsk[is'] property, the allegations in the complaint only spe[a]k to an encroachment on their own property. [The Kellys] conflate this interest with legal title to real estate of another property. [The Kellys] do not have a valid claim on title such that the lis pendens can be maintained.

[(citing Fravega v. Sec. Sav. & Loan Ass'n, 192 N.J. Super. 213, 217 (Ch. Div. 1983)).]

16

trial court, we conclude there is no reason to disturb the finding that the Tancevskis failed to establish damages.

"Malice is defined as the intentional commission of a wrongful act without just cause or excuse." Lone, 199 N.J. Super. at 426. "Where a defendant acts in pursuance of a bona fide claim which he is asserting honestly, although without right, as eventually appears from an adjudication by a court of competent jurisdiction, such defendant will not be penalized in damages for asserting such a bona fide claim in good faith." Rogers Carl Corp. v. Moran, 103 N.J. Super. 163, 168 (App. Div. 1968).

Here, as to malice, the Tancevskis suggest that the Kellys' filing of the lis pendens was "abusive" and effectuated to "gin up litigation leverage." However, the judge did not make that finding. Instead, the judge accepted Patrick's testimony that there was no "demand for possession of [the Tancevski]s' property in the complaint" and that he "did not discuss the filing of the lis pendens with [his attorney] and [the attorney] filed it on his own." On this record, we conclude there was no evidence the Kellys acted with malice.

Thus, we are convinced there was no error in the trial court's conclusion that the Tancevskis failed to establish slander of title as a result of the Kellys' filing of the lis pendens.

A-2452-22

For the sake of completeness, we address the Tancevskis': (1) assertion that the Kellys' filing of the lis pendens is not protected by the litigation privilege; and (2) invitation to "take this opportunity to update the law to both prohibit and sanction any inappropriate use of lis pendens beyond the purposes provided by statute" and when a "lis pendens [is] filed beyond the requirements of N.J.S.A. 2A:15-6 [the filer is] not afforded any protections under the statute, [and] represents a slander of title, and the party abusing the procedure should be held responsible for compensating the impacted property owner."

In Lone, we held that the litigation privilege provided immunity for a claim of slander of title for a party that properly filed a notice of lis pendens. 199 N.J. Super. at 426-27; see also Brown v. Brown, 470 N.J. Super. 457, 467 (App. Div. 2022) ("statements contained within a notice of lis pendens are certainly protected by the litigation privilege.").

The doctrine of litigation immunity provides:

> an absolute immunity exists in respect of statements, even those defamatory and malicious, made in the course of proceedings before a court of justice, and having some relation thereto, [it] is a principle firmly established, and is responsive to the supervening public policy that persons in such circumstances be permitted to speak and write freely without the restraint of fear of an ensuing defamation action, this sense of freedom being indispensable to the due administration of justice.

18                                                                    A-2452-22

> [Brown, 470 N.J. Super. at 464 (quoting Fenning v.
> S.G. Holding Corp., 47 N.J. Super. 110, 117 (App. Div.
> 1957)).]

"Whether a [party] is entitled to the [litigation] privilege is a question of law." Hawkins v. Harris, 141 N.J. 207, 216 (1995). Given the facts here—no falsity, malice, or damages—the Kellys enjoy the protection of immunity in the filing of the lis pendens. In addition, we decline the invitation to make any mistaken filing of a lis pendens a per se slander of title subjecting the filer to sanctions.

Therefore, we conclude the trial court did not err in denying the Tancevskis' claim for slander of title. Further, we reject: (1) the Tancevskis' argument that the litigation privilege did not provide the Kellys immunity, in filing of the lis pendens; and (2) the invitation to acknowledge a per se slander of title claim for the mistaken filing of the lis pendens.

## C.

The Tancevskis and the Kellys contest the trial court's remedy. The trial court imposed a "temporary easement permitting the encroachment of the driveway onto [the Kelly] property . . . [requiring it] to remain until the repair or replacement of the driveway at" the Tancevskis' property. Thereafter, "[u]pon the repair or replacement of the driveway the easement [would] terminate[], and

the owner of [the Tancevskis' property] is to construct the driveway so that it is in compliance with the property line and does not encroach on" the Kellys' property.

The Tancevskis argue that the trial court "went about fashioning an ad-hoc, provisional and completely unworkable remedy consisting of a temporary driveway." They contend "[s]uch a 'split the baby'-style remedy, rather than the permanent reliefs available under [N.J.S.A. 2A:14-6], was entirely unsupported and requires reversal." The Tancevskis assert that "the appropriate remedy involving property encroachments for which ejectment is no longer a viable remedy is a permanent easement, not the temporary construct conjured by the trial court."

In addition, the Tancevskis contend the Kellys failed to share with them or produce at trial how the driveway relocation was possible considering "the site's topography, improvements and location of the septic system, which partially lies beneath the driveway itself, yet still satisfy the Borough's minimum driveway design standards."

In turn, the Kellys contend that the trial court erred "by failing to set a time frame for" the Tancevskis' compliance. The Kellys assert the "failure to provide a deadline defeats the intended remedy" because the Tancevskis have

"until the end of time to repair or replace the driveway." Moreover, the Tancevskis have "no incentive to make repairs that are going to cost them money."

"[A] court's equitable jurisdiction provides as much flexibility as is warranted by the circumstances." Matejek v. Watson, 449 N.J. Super. 179, 183 (App. Div. 2017). Indeed,

> [e]quitable remedies "are distinguished for their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties."
>
> [Sears v. Camp, 124 N.J. Eq. 403, 411-12 (E. & A. 1938) (quoting Pom. Eq. Jur. § 109 (4th ed. 1918)).]

For the reasons previously stated in this opinion, we reject the Tancevskis' claim for a permanent easement. Moreover, the trial court accepted as credible Patrick's testimony "that if [the Tancevski]s stopped using the area of the driveway that encroached on [the Kelly]s' property that there would still be sufficient frontage for the driveway pursuant to the applicable . . . ordinance." Given our deference to the trial court's credibility determinations and factual

A-2452-22

findings, we conclude there is no reason to disturb the judge's remedy requiring the eventual relocation of the driveway.

Moreover, we have no reason to disturb the trial court's open-ended remedy. The Kellys waited years before instituting a cause of action for nuisance, failed to sustain their cause of action, and suggested similar remedies through the years. Under these circumstances, we conclude there was no error in not requiring removal within a certain time frame.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION