**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0095-20

WELLS FARGO BANK, N.A.,

    Plaintiff-Appellant,

v.

ARLINE FRIEDMAN,
the estate of MILTON D.
FRIEDMAN, deceased, and
MRS. MILTON D.
FRIEDMAN, his wife,

    Defendants-Respondents.

_____

Argued November 29, 2021 – Decided December 9, 2021

Before Judges Fasciale and Firko

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0249-19.

Henry F. Reichner argued the cause for appellant (Reed Smith, LLP, attorneys; Henry F. Reichner, of counsel and on the briefs).

Robert J. Nish argued the cause for respondent (Nish & Nish, LLC, attorneys; Robert J. Nish, on the brief).

PER CURIAM

Plaintiff appeals from three June 11, 2020 orders: granting defendant the Estate of Milton D. Friedman (the Estate)'s motion for summary judgment, denying plaintiff's cross-motion for partial summary judgment, and denying plaintiff's motion to amend the complaint; and an August 20, 2020 order awarding the Estate-attorney's fees and costs.[1] We affirm in part, reverse in part, and remand in part for further proceedings consistent with this opinion.

For this appeal, we adopt those facts from the underlying the foreclosure action as set forth in our previous opinion in Wells Fargo Bank v. Friedman, No. A-3028-18 (App. Div. Jan. 29, 2020).

Plaintiff filed its foreclosure complaint on July 26, 2016. In September 2017, plaintiff filed its amended complaint and asserted claims for: (count one) foreclosure of the subject property; (count two) possession of the subject property; (count three) an equitable lien based on the loan; (count four) an equitable lien based on property charges paid by plaintiff; (count five) an action

_____

[1] Defendants Arline Friedman (Arline) and Mrs. Milton D. Friedman have not filed individual merits briefs and appear not to be involved in this appeal.

A-0095-20

on the subject note; (count six) an action on the related note against Arline;[2] (count seven) equitable subrogation based on the related loan; and (count eight) unjust enrichment. Milton Friedman (Milton) answered the amended complaint, and filed a counterclaim seeking to: (count one) discharge the subject mortgage as void; (count two) discharge another mortgage on the subject property; (count three) recover damages for common law fraud; (count four) recover damages under the New Jersey Consumer Fraud Act (CFA), N.J.S.A 56:8-1 et seq.; and (count five) recover damages for common law fraud. Plaintiff filed a motion to dismiss counts three through five of Milton's counterclaim.

The judge,[3] sitting in the Chancery Division, by order dated June 22, 2018, transferred counts three through eight of plaintiff's amended complaint to the Law Division. Subsequently, the judge, denied reconsideration of his earlier transfer order but, in doing so, ordered that count two of the counterclaim be transferred to the Law Division. Thus, matters were pending in the Chancery and Law Divisions.

---

[2] We refer to Arline and Milton Friedman by their first names because they share the same last name. We intend no disrespect in doing so.

[3] The same judge presided over both actions, sitting in the Chancery Division and the Law Division.

A-0095-20

On January 2, 2019, trial commenced before the judge in the Chancery Division on the remaining claims. That judge found that an employee of Wachovia[4] had forged Milton's signature on the loan documents at issue. The judge entered an order on January 30, 2019, dismissing counts one and two of the amended complaint with prejudice and entered judgment in favor of Milton on count one of the counterclaim, thereby discharging the subject mortgage.

In the Chancery case, plaintiff appealed from the January 30, 2019 order and from the June 22, 2018 transfer order. In that appeal, we affirmed. Friedman, slip op. at 14. Before this court's ruling, the parties filed identical pleadings in the Law Division. On February 11, 2020, the Estate filed a motion to amend the pleadings to substitute it for Milton, who had passed away during the litigation, and for summary judgment. On February 12, 2020, plaintiff filed a motion for leave to file a second amended complaint. The Estate filed a cross-motion for dismissal. On March 3, 2020, plaintiff filed its opposition to the Estate's motion for summary judgment and a cross-motion for partial summary judgment. The motions led to the orders under review.

---

[4] Wachovia is Wells Fargo Bank's predecessor-in-interest.

A-0095-20

The judge, sitting in the Law Division, heard oral argument on the pending motions and initially entered four orders. The first order substituted the Estate for Milton, entered judgment in favor of the Estate on count one of the counterclaim, and entered judgment on counts two, six, and eight of the amended complaint. The second order denied plaintiff's motion to amend with prejudice. The third order dismissed the Estate's cross-motion as moot. The fourth denied plaintiff's cross-motion for partial summary judgment with prejudice.

On July 10, 2020, the Estate submitted materials to supplement its claim for damages on count one of the counterclaim. Following briefing on the issue, the judge rendered an oral decision on damages and entered judgment awarding the Estate $197,888.71 for fees incurred while litigating the Chancery Division action and transferring the claims to the Law Division.

On appeal, plaintiff raises the following points for this court's consideration:

> POINT I
>
> THE LAW DIVISION [JUDGE] ERRED IN ENTERING SUMMARY JUDGMENT AGAINST [PLAINTIFF] AND AWARDING $197,888.71 ON COUNT [ONE] OF THE COUNTERCLAIM[].
>
> > A. Count [One] Was Not Transferred To The Law Division And The Chancery Division Had Already Ruled On The Claim, Which

A-0095-20

Ruling This Court Upheld; The Law Division [Judge] Was Thus Precluded From Relitigating It.

B. The Estate Did Not Establish A Slander Of Title Claim Upon Which Summary Judgment Could Be Entered.

C. The Chancery Division [Judge] Discharged The Mortgage As Of January 30, 2019, And Was Affirmed January 29, 2020; The Law Division [Judge] Thus Erred In Awarding Fees For Work Performed In Connection With The Law Division Action.

POINT II

THERE WERE GENUINE ISSUES OF MATERIAL FACT PRECLUDING THE ENTRY OF SUMMARY JUDGMENT ON [PLAINTIFF'S] EQUITABLE LIEN AND UNJUST ENRICHMENT CLAIMS.

A. [Milton] Was Aware Of The June 2006 Mortgage But Raised No Objection To It; He Also Benefitted From It In That Advances Were Used To Pay His Real Estate Taxes, The May 2016 Loan, Improvements, And Expenses.

B. The Law Division [Judge] Erred In Entering Summary Judgment On The Unjust Enrichment Claim And In Finding That There Was No Proof That [Milton] Benefitted From The 2006 Line Of Credit.

POINT III

6

THE LAW DIVISION [JUDGE] ERRED IN DENYING [PLAINTIFF] LEAVE TO FILE A SECOND AMENDED COMPLAINT.

I.

A.

We first address plaintiff's contention that the judge erred in awarding summary judgment against it and awarding attorney's fees on count one of the counterclaim. Plaintiff argues the judge, sitting in the Chancery Division, never transferred count one to the Law Division; the Estate did not plead and prove a cause of action for slander of title; and the fee award was not supported by the record.

The judge tried counts one and two of plaintiff's amended complaint and count one of defendants' counterclaim in the Chancery Division. The judge found that the loan officer's employee forged Milton's signature on the loan documents at issue, entered an order dismissing counts one and two of the amended complaint with prejudice, and entered judgment in favor of Milton on count one of the counterclaim. As we pointed out, plaintiff had appealed from the order and this court affirmed. Friedman, slip op. at 14.

The judge, sitting in the Law Division, acknowledged that "[o]n June 22[] of 2018 the [judge] entered an order that transferred [c]ounts [three] through

7                                                                    A-0095-20

[eight] of the amended complaint to the Law Division, and there followed an order on October of 2018 to transfer [c]ount [two] of the counterclaim to the Law Division." The judge specifically noted that, on January 30, 2019 in the Chancery Division, he granted summary judgment in favor of Milton on counts one and two of plaintiff's amended complaint and entered judgment in favor of Milton on count one of the counterclaim in the Chancery Division. Despite this, the judge, sitting in the Law Division, also ruled on count one by awarding Milton $197,888.71 in damages.

Plaintiff argues the doctrine of res judicata bars relitigation of the issue. The Estate maintains that the doctrine does not apply because the Chancery ruling was not final as severed claims were pending in the Law Division and was not on the merits because the judge never ruled on Milton's claims for damages in the Chancery Division.

Res judicata, or claim preclusion, "refers broadly to the common-law doctrine barring relitigation of claims or issues that have already been adjudicated." Tarus v. Borough of Pine Hill, 189 N.J. 497, 520 (2007) (quoting Velasquez v. Franz, 123 N.J. 498, 505 (1991)). Res judicata bars repetitive litigation when there has been a final judgment by a court of competent

jurisdiction and the causes of action, issues, parties, and relief sought are substantially similar. Culver v. Ins. Co. of N. Am., 115 N.J. 451, 460 (1989).

A judge must bar relitigation when a party demonstrates each of the following requirements:

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.
>
> [McNeil v. Legis. Apportionment Comm'n of N.J., 177 N.J. 364, 395 (2003) (quoting Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 412 (1991)).]

Here, no prior final, valid judgment addressed the merits of Milton's claim for damages. In January 2019, the judge dismissed counts one and two of the amended complaint with prejudice in the Chancery Division. The judge also entered judgment in favor of Milton on count one of the counterclaim and discharged the mortgage. As noted explicitly by the judge, on count one of the counterclaim before the judge while in the Chancery Division, there was a "demand for monetary relief, monetary damages," but that demand was not addressed by the entry of that judgment. In fact, the judge never discussed the issue of damages in issuing his decision in favor of Milton on count one of the counterclaim in the Chancery Division.

As the judge correctly found, the discharge of the mortgage in the Chancery Division did not "end the case." The judge's award of damages to the Estate in August 2020 in the Law Division addressed a separate claim from the January 2019 decision to discharge the mortgage. The judge found that the Estate was entitled to damages for the fees incurred in litigating the Chancery action and the claims transferred to the Law Division. The judge never ruled on the merits of Milton's claim for damages prior to the judge's decision in August 2020 in the Law Division. The judge's judgment from the Chancery Division discharging the mortgage was not a final decision addressing the merits of a claim for damages. Res judicata therefore does not bar or preclude the claim.

B.

Plaintiff contends that even if count one was properly before judge in the Law Division—which plaintiff asserts it was not—the Estate did not establish a slander of title claim that would support the entry of summary judgment against plaintiff. Plaintiff contends that the fact that Wachovia's loan officer forged Milton's signature and caused the mortgage to be recorded is insufficient to establish the elements of publication and malice with respect to the loan officer's employer, plaintiff's predecessor-in-interest.

10

When reviewing a grant of summary judgment, we apply the same standard as the motion judge and consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Rule 4:46-2(c) provides that a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." "To decide whether a genuine issue of material fact exists, the trial [judge] must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 450, 472 (2020) (second alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).

The tort of slander of title is the "publication of false assertions concerning [the] plaintiff's title, causing [the] plaintiff special damages." Peters Well Drilling Co. v. Hanzula, 242 N.J. Super. 16, 24-25 (App. Div. 1990) (quoting Lone v. Brown, 199 N.J. Super. 420, 426 (App. Div. 1985)). The accused party must also have acted out of malice, either express or implied. Lone, 199 N.J. at

11

426. "Malice is defined as the intentional commission of a wrongful act without just cause or excuse." Ibid. However, "[w]here a defendant acts in pursuance of a bona fide claim which he is asserting honestly, although without right, as eventually appears from an adjudication by a court of competent jurisdiction, such defendant will not be penalized in damages for asserting such a bona fide claim in good faith." Rogers Carl Corp. v. Moran, 103 N.J. Super. 163, 168 (App. Div. 1968). Moreover, statements made during judicial proceedings are privileged from slander of title causes of action. Lone, 199 N.J. Super. at 426.

The judge found that Wachovia's recording of the subject mortgage met the slander of title elements of falsely publishing an assertion concerning title because Milton's signature was found to have been forged. The judge also found special damages in Milton's attorney's fees and costs to establish that his signature was forged. Finally, the judge found that the actions of the Wachovia officer in forging and recording the mortgage satisfied the element of malice.

Our Court has noted that "[o]nly rarely will intentional torts fall within the scope of employment." Davis v. Devereux Found., 209 N.J. 269, 303 (2012). To that end, "[t]he difference between acts that are within the scope of employment and acts that are not is sharply illustrated when a[n] employee, working for a lawful employer, commits a crime." Ibid. However, "[w]hen the

12

employee's conduct—however aggressive and misguided—originated in his or her effort to fulfill an assigned task, the act has been held to be within the scope of employment." Ibid. While a criminal act may fall within the scope of employment,

> [t]he fact that the [employee] intends a crime, especially if the crime is of some magnitude, is considered in determining whether or not the act is within the employment, since the [employer] is not responsible for acts which are clearly inappropriate to or unforeseeable in the accomplishment of the authorized result.
>
> [Ibid. (first alteration in original) (quoting Restatement (Second) of Agency § 231 cmt. a).]

The Estate's sole argument on appeal is that the loan officer was an employee of plaintiff's predecessor-in-interest. This was the same, and only, basis for the judge's ruling on the slander of title claim. However, the record is devoid of evidence regarding the loan officer's intentions and evidence that plaintiff's predecessor-in-interest authorized or encouraged the loan officer to forge Milton's signature or falsely notarize the signatures. The record is also bereft of evidence that the loan officer was motivated by a purpose to serve his employer in forging the signature or a reason that plaintiff's predecessor-in-interest would expect that such a criminal act would be undertaken.

13

Viewing the evidence in the light most favorable to plaintiff, and in light of the case law, there exists a genuine issue of material fact pertaining to the loan officer's actions and whether he was acting within the scope of employment. As such, there was a question of fact as to the element of malice on the slander of title claim which precludes summary judgment. As to the ruling on the slander of title claim, we reverse.

## II.

Next, we address plaintiff's contention that there were genuine issues of material fact which prevent the entry of summary judgment of its equitable lien and unjust enrichment claims. We disagree and affirm.

Plaintiff asserts that despite the forged signature, Milton had sufficient knowledge of and sufficiently benefitted from the mortgage to ratify the transaction. The Estate argues that the judge properly granted summary judgment as to the equitable mortgage claim because there can be no equitable mortgage where a defendant was not a party to the transaction.

"An equitable mortgage is created by agreement of the parties." Reibman v. Myers, 451 N.J. Super. 32, 48 (App. Div. 2017) (citing James Talcott, Inc. v. Roto Am. Corp., 123 N.J. Super. 183, 203 (Ch. Div. 1973)). "If a deed or contract . . . is used for the purpose of pledging real property, . . . as security for

14

a debt or obligation, and with the intention that it shall have effect as a mortgage, equity will give effect to the intention of the parties." Id. at 48-49 (alteration in original) (quoting J.W. Pierson Co. v. Freeman, 113 N.J. Eq. 268, 270-71 (E. & A. 1933)).

In Zaman v. Felton, 219 N.J. 199, 218 (2014), our Court adopted "eight factors to assist trial judges in determining whether a given transaction gives rise to an equitable mortgage." These factors include:

> (1) Statements by the homeowner or representations by the purchaser indicating an intention that the homeowner continue ownership; (2) A substantial disparity between the value received by the homeowner and the actual value of the property; (3) Existence of an option to repurchase; (4) The homeowner's continued possession of the property; (5) The homeowner's continuing duty to bear ownership responsibilities, such as paying real estate taxes or performing property maintenance; (6) Disparity in bargaining power and sophistication, including the homeowner's lack of representation by counsel; (7) Evidence showing an irregular purchase process, including the fact that the property was not listed for sale or that the parties did not conduct an appraisal or investigate title; [and] (8) Financial distress of the homeowner including the imminence of foreclosure and prior unsuccessful attempts to obtain loans.
>
> [Ibid. (quoting O'Brien v. Cleveland, 423 B.R. 477, 491 (Bankr. D.N.J. 2010) (alterations omitted)).]

A-0095-20

A person may ratify "a prior act which did not bind him but which was done, or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." Martin Glennon, Inc. v. First Fid. Bank, N.A., 279 N.J. Super. 48, 60 (App. Div. 1995) (quoting Thermo Contracting Corp. v. Bank of N.J., 69 N.J. 352, 361 (1976)). A person may ratify an unauthorized act if they have "full knowledge of all the relevant facts and full appreciation of what was being done." Citizens First Nat'l Bank of N.J. v. Bluh, 281 N.J. Super. 86, 98 (App. Div. 1995) (quoting In re Estate of Lange, 75 N.J. 464, 479 (1978)). This similarly applies to ratification by silence, which "may be inferred from a failure to repudiate" an unauthorized act in circumstances where "it is clear that the principal was fully informed of what the agent did." Reibman, 451 N.J. Super. at 50 (citing Bluh, 281 N.J. Super. at 98). And in cases concerning spouses, "it is the general principle that [the spouse] is the agent of [their married partner] only by virtue of [the] authority expressly conferred or reasonably to be implied from the circumstances." Smedley v. Sweeten, 11 N.J. Super. 39, 41 (App. Div. 1950).

Here, while Milton never dealt directly with plaintiff, evidence in the record shows that Milton was aware of the subject mortgage encumbering the property and received communications about it for years. The record also shows

16

that a portion of those funds were used to make monthly payments on the loan, to pay real estate taxes on the property, and to pay for Milton's living expenses. This is sufficient to "ratify" the acts of Arline because Milton "was fully informed of what the agent did." Reibman, 451 N.J. Super. at 50. Although we conclude that Milton had sufficient knowledge to ratify the acts of Arline, it is not sufficient to justify equitable relief against the Estate for the reasons that follow.

Plaintiff argues that there was sufficient evidence that Milton received a benefit from the June 2006 line of credit to preclude summary judgment. The Estate argues that the judge properly granted summary judgment as to the unjust enrichment claim because the transaction in question was between plaintiff and Arline, and there is no clear traceable benefit that can be identified flowing from plaintiff to Milton.

Unjust enrichment, or quantum meruit, is a "quasi-contractual recovery for services rendered when a party confers a benefit with a reasonable expectation of payment" and "entitles the performing party to recoup the reasonable value of services rendered." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 437-38 (1992). This remedy

> is wholly unlike an express or implied-in-fact contract
> in that it is imposed by the law for the purpose of

17

bringing about justice without reference to the intention of the parties. The equitable remedy is applicable only when one party has conferred a benefit on another, and the circumstances are such that to deny recovery would be unjust.

[N.Y.-Conn. Dev. Corp. v. Blinds-To-Go (U.S.) Inc., 449 N.J. Super. 542, 556 (App. Div. 2017) (internal quotation marks and citations omitted).]

To establish a claim for unjust enrichment, "a party must demonstrate that the opposing party 'received a benefit and that retention of that benefit without payment would be unjust.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 288 (2016) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 110 (2007)). A plaintiff must additionally "show that it expected remuneration from the defendant at the time it performed or conferred a benefit on [the] defendant and that the failure of remuneration enriched [the] defendant beyond its contractual rights." Ibid. (internal quotation mark omitted) (quoting Iliadis, 191 N.J. at 110).

Where an express contract exists, a judge may not grant "relief regarding the same subject matter based on quantum meruit." Kas Oriental Rugs, Inc. v. Ellman, 394 N.J. Super. 278, 286 (App. Div. 2007). "An implied contract cannot exist where there is an express contract about the identical subject. The parties are bound by their agreement, and there is no ground for implying a promise."

Blinds-To-Go, 449 N.J. Super. at 556 (quoting E. Paralyzed Veterans Ass'n v. Camden, 111 N.J. 389, 410 (1988)).

The record reflects that plaintiff did not confer a benefit on Milton. Plaintiff asserts that it lent money to Arline, which she gave to Milton. In turn, that because Milton paid for his property taxes, home renovations, and necessary living expenses through this loan, he received a benefit. But the conferral of a benefit from Arline to Milton, a third party to the contract, does not justify equitable relief. Plaintiff's remedy is contractual against the party with whom it dealt—Arline. Plaintiff cannot substitute one promisor or debtor for another.

## III.

Finally, we address plaintiff's contention that the judge erred when he denied its motion to amend the complaint.

Rule 4:9-1 governs motions to amend pleadings. Our Court has construed this rule to "'require[] that motions for leave to amend be granted liberally,' even if the ultimate merits of the amendment are uncertain." Prime Accounting Dep't v. Twp. of Carney's Point, 212 N.J. 493, 511 (2013) (alteration in original) (quoting Kernan v. One Wash. Park Urb. Renewal Assocs., 154 N.J. 437, 456 (1998)). The Court stated, however, that

> [o]ne exception to that rule arises when the amendment
> would be futile, because the amended claim will

> nonetheless fail and, hence, allowing the amendment would be a useless endeavor. [C]ourts are free to refuse leave to amend when the newly asserted claim is not sustainable as a matter of law. . . . [T]here is no point to permitting the filing of an amended pleading when a subsequent motion to dismiss must be granted.
>
> [Ibid. (second, third, and fourth alterations in original) (citations and internal quotation marks omitted).]

The grant or denial on a motion to file an amended pleading always rests in the judge's sound discretion. Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006).

The judge's decision not to grant plaintiff leave to file a second amended complaint turned on the judge's belief that amendment would be futile. The judge specifically found that his entry of summary judgment on the equitable lien and unjust enrichment claims asserted in the amended complaint prevented plaintiff from asserting the equitable lien, unjust enrichment, fraudulent transfer, quiet title, and civil conspiracy claims set forth in the second amended complaint.

For the reasons set forth above, the judge's entry of summary judgment on plaintiff's equitable claims was not in error. Thus, the judge properly exercised his discretion in denying leave to amend where his entry of summary judgment against plaintiff on the equitable claims rendered such amendment futile.

A-0095-20

To the extent not addressed, plaintiff's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

In sum, we affirm the judge's grant of summary judgment to the Estate on the equitable claims, and the judge's denial of leave to amend. We reverse as to the judge's grant of summary judgment in favor of the Estate on the slander of title theory, and as to the award of costs of litigation and attorney's fees for the slander of title action.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0095-20