199 N.J. Super. 420 (1985)
489 A.2d 1192
ROBERT LONE AND ELIZABETH LONE, PLAINTIFFS-RESPONDENTS,
v.
KEITH P. BROWN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 20, 1985.
Decided March 11, 1985.
*422 Before Judges J.H. COLEMAN and SIMPSON.
Marcia Kuttner Baer argued the cause for appellant (Newman and Baer, attorneys; Marcia Kuttner Baer on the brief).
Douglas S. Brierley argued the cause for respondents (Schenck, Price, Smith & King, attorneys; Clifford W. Starrett of counsel; Douglas S. Brierley on the brief and reply brief).
The opinion of the court was delivered by COLEMAN, J.H., J.A.D.
The fundamental questions presented for determination in this appeal are whether the filing of (1) a notice of lis pendens on May 15, 1981, (2) a notice of appeal on June 17, 1981, or (3) a notice of lis pendens on June 17, 1981 can give rise to a slander of title cause of action. The trial court granted plaintiffs summary judgment on liability finding that defendant had slandered plaintiffs' title. In a nonjury trial, the judge later awarded plaintiffs compensatory damages. We now hold that the filing of each of the foregoing documents was absolutely privileged. Consequently, defendant was immune from liability for slander of title. The judgment for plaintiffs is reversed.
The facts essential to our determination are not in serious dispute. On April 6, 1981 Brown contracted to purchase a home from the Lones which is located at 241 Summit Drive, Boonton Township, N.J. for $90,000. Title was scheduled to close on June 2, 1981. Brown deposited $500 on the signing of the contract. The contract obligated him to make an additional $8,500 deposit by April 26, 1981. Brown was obligated to make immediate application for an $80,000 purchase money mortgage. *423 The contract also provided that if Brown did not make application for the mortgage immediately, or if the additional $8,500 deposit had not been made by April 26, 1981, or if the mortgage commitment was not obtained within 45 days, either party was free to void the contract. On April 29, 1981 plaintiffs exercised their option and voided the contract because Brown had neither made application for a mortgage nor made the additional deposit. The Lones then contracted to sell the home to Herbert Seiler for $88,000; he agreed to a May 15, 1981 closing. Seiler did not require a mortgage.
On May 11, 1981 Brown filed a complaint in Chancery for specific performance of the contract. On May 15, 1981 Brown filed a notice of lis pendens and served same upon Seiler's attorney. On June 5, 1981 the Chancery judge granted the Lones summary judgment and dismissed the complaint for specific performance. The lis pendens notice was also discharged.
Brown filed a notice of appeal and another notice of lis pendens on June 17, 1981. On August 20, 1981 the Appellate Division denied the Lones' applications for summary affirmance and to require Brown to file a supersedeas bond. At or about the same time, Seiler notified the Lones that he was no longer interested in purchasing the home. He exercised his option and voided the contract. On January 26, 1982 the Appellate Division affirmed the decision of the Chancery Division. The second lis pendens was also discharged.
Shortly after the Appellate Division denied summary affirmance on August 20, 1981, counsel for the parties commenced negotiations for an amendment to the contract to permit Brown to purchase the property for the same $90,000. The parties did not come to agreement on the amendment, however, until the day before the Appellate Division's decision. Consequently, on January 25, 1982 the parties executed an addendum to the April 6, 1981 contract. That addendum provided that neither the execution of the addendum nor the closing of title and delivery *424 of the deed would constitute "a waiver of any claims or rights which each may have against the other for any matter arising prior to the date of closing...." They also agreed that the addendum would not moot the pending appeal. Brown took title to the property on or about February 1, 1982.
On September 21, 1982 the Lones instituted the present action against Brown alleging that Brown had wrongfully instituted the action for specific performance and filed a lis pendens which prevented the Lones from selling the property to Seiler for $88,000. Plaintiffs also alleged that Brown breached the contract between June 2, 1981, the originally scheduled closing date, and February 1, 1982, when Brown took title. Plaintiffs sought damages for the alleged breach of contract and for the alleged wrongful prevention of Seiler from closing title. Partial summary judgment was granted plaintiffs on August 30, 1983 based on the papers filed. No oral or written opinion was given explaining the reasons therefor despite the requirement of R. 2:5-1(b). The order granting partial summary judgment provided:
... the plaintiffs are entitled to a judgment on liability as a matter of law in that the trial court determined on the first trial as affirmed on appeal that defendant, Keith P. Brown, was not entitled to specific performance of the agreement between the parties dated April 6, 1981 and the answer in the within litigation admits that the filing of the Notice of Appeal and Lis Pendens prevented plaintiffs from selling their property to Herbert Seiler for $88,000....
Following the entry of partial summary judgment, the trial judge conducted a nonjury trial to determine the damages to be awarded plaintiffs. He found that plaintiffs were entitled to compensatory damages and cost of suit in the sum of $14,985.38 inclusive of prejudgment interest. The damages accrued from May 15, 1981, when the first lis pendens was filed and the date title was scheduled to close with Seiler. In the damages trial, the judge made clear that defendant's liability was based on slander of title rather than breach of contract. He stated:

*425 The damages began to accrue when the defendant committed a slander on the title of the plaintiffs.
* * * * * * * *
The defendant asserted a right, title and interest in the real estate to the exclusion of the plaintiffs, which he had no reason to assert.... [I]t was a wrongful assertion, and he thereby inflicted damages upon the plaintiffs because, from and after May 15, 1981, they were compelled to maintain a bridge loan and the mortgage on the Boonton house and pay taxes on the Boonton house as well as insurance, and keep fuel oil supplied and electric supplied there, and while they had a house elsewhere that they could have and should have been living in but for the actions of the wrongful conduct of the defendant.
The judge reasoned that there were no damages for breach of contract proximately caused by defendant's failure to perform for two reasons. First, plaintiffs exercised their option and voided the April 6, 1981 contract. Second, plaintiffs contracted with a new buyer at or about the time the contract with defendant was voided. Even though defendant did not file a cross motion for summary judgment, the judge concluded that plaintiffs could not recover any damages based on breach of contract. That determination was eminently fair given the fact that plaintiffs rescinded the contract. Since plaintiffs have not cross appealed from that determination, we will not consider plaintiffs' request that breach of contract be regarded as an alternative to the slander of title cause of action.
Defendant has appealed from a final judgment, pursuant to R. 2:2-3(a) contending essentially, among other things, that as a matter of law the filing of the complaint for specific performance, the notice of appeal and the two notices of lis pendens did not slander plaintiffs' title. He argues that the filings were absolutely privileged and may not give rise to an action for damages. Generally, slander of title is defined as a false and malicious statement made in disparagement of a person's title to real or personal property, causing injury. 50 Am.Jur.2d § 539 at 1058. Comment a. to Restatement, Torts 2d ed. § 624 at 343 (1977), states:
The particular form of injurious falsehood that involves disparagement of the property in land, chattels, or intangible things, is commonly called `slander of *426 title.' The earliest cases in which it arose involved oral aspersions cast upon the plaintiff's ownership of land, as a result of which he was prevented from selling or leasing it; and the decisions went upon an analogy to the kind of oral defamation of the person that is actionable only upon proof of special harm. (See § 569). The extension of the liability to other kinds of injurious falsehood has left the terms `slander of title,' and `disparagement,' merely as special names given to this particular form of the tort.
The association with personal defamation through the word `slander' has unfortunately tended to lead the courts to regard the plaintiff's property interest as somehow personified, and so defamed, and thus to look to the law of defamation. `Slander of title,' however, differs from personal defamation in at least three important respects. One is that proof of special harm is required in all cases. (See § 633). Another is that there must be proof of a greater amount of fault than negligence on the part of the defendant regarding the falsity of the statement. (See § 623A, especially Comment d). The third is that because of the economic interest involved the disparagement of property may in a proper case be enjoined, whereas defamation normally cannot.
New Jersey defines the tort of slander of title as a publication of a false assertion concerning plaintiff's title, causing plaintiff special damages. Andrew v. Deshler, 45 N.J.L. 167, 169-172 (E. & A. 1883). Another element is malice, which has to be either express or implied. Rogers Carl Corp. v. Moran, 103 N.J. Super. 163, 168 (App.Div. 1968). Malice is defined as the intentional commission of a wrongful act without just cause or excuse. Mayflower Industries v. Thor Corp., 15 N.J. Super. 139, 152 (Ch.Div. 1951), aff'd o.b. 9 N.J. 605 (1952). Thus, the tort of slander of title requires a plaintiff to establish that defendant falsely published an assertion concerning plaintiff's title which caused special damages to the plaintiff and that defendant acted out of malice, which was express or implied.
Even though New Jersey recognizes slander of title as a viable cause of action, the question presented is whether defendant enjoys immunity. It is well established that statements, written or oral, made by judges, attorneys, witnesses, parties or jurors in the course of judicial proceedings, which have some relation thereto, are absolutely privileged from slander or defamation actions, even if the statements are made with malice. Rainier's Dairies v. Raritan Valley Farms, Inc., *427 19 N.J. 552, 557-558 (1955). See Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 117 (App.Div. 1957); Rogers v. Thompson, 89 N.J.L. 639, 640 (E. & A. 1916); LaPorta v. Leonard, 88 N.J.L. 663, 665 (E. & A. 1916). See also Veeder, Absolute Immunity in Defamation, 9 Col.L.Rev. 463 (1909); Restatement, supra §§ 585-590; 30 N.Y.U.L.Rev. 171 (1955); 15 Ohio St.L.J. 330 (1954); 28 St. Johns L.Rev. 129 (1953). Cf. Kantor v. Kessler, 132 N.J.L. 336 (E. & A. 1945); O'Regan v. Schermerhorn, 25 N.J. Misc. 1 (Sup.Ct. 1946). Clearly, pleadings, such as the complaint filed herein, are regarded as part of the judicial proceedings. Genito v. Rabinowitz, 93 N.J. Super. 225, 229 (App.Div. 1966). We are persuaded that filing a notice of appeal is as much a part of a judicial proceeding as filing a complaint. It is beyond dispute that the Appellate Division has jurisdiction over the appeals taken from final judgments of the Chancery Division. R. 2:2-3(a). We perceive no rational basis for holding that filing a complaint to initiate an action before a trial court is privileged but filing a notice of appeal to initiate review of a trial court's determination does not enjoy the same privilege. Both involve judicial proceedings and are necessary before an aggrieved party can be heard in court.
Having decided that the complaint and notice of appeal were absolutely privileged from slander of title causes of action, we must now decide whether filing the notices of lis pendens enjoys the same status. The notice of lis pendens statute, N.J.S.A. 2A:15-6, provides:
In every action, instituted in any court of this State having civil jurisdiction or in the United States District Court for the District of New Jersey, the object of which is to enforce a lien, other than a mechanic's lien, upon real estate or to affect the title to real estate or a lien or encumbrance thereon, plaintiff or his attorney shall, after the filing of the complaint, file in the office of the county clerk or register of deeds and mortgages, as the case may be, of the county in which the affected real estate is situate, a written notice of the pendency of the action, which shall set forth the title and the general object thereof, with a description of the affected real estate.
No notice of lis pendens shall be filed under this article in an action to recover a judgment for money or damages only.
*428 The statute does not require the notice to be in affidavit form. It may be filed based on a plaintiff's unverified complaint. United S. & L. Ass'n v. Scruggs, 181 N.J. Super. 52, 54-55 (Ch.Div. 1981). The propriety of filing a notice of lis pendens must be determined from the pleadings alone. Polk v. Schwartz, 166 N.J. Super. 292, 298 (App.Div. 1979).
Here, Brown instituted the action by filing an unverified complaint in the Chancery Division of Morris County seeking specific performance of the April 6, 1981 contract. In the complaint Brown alleged that the provisions in the contract with respect to making an application for a mortgage and for making the additional deposit were not time of the essence. The first notice of lis pendens was filed on May 15, 1981. Brown sought to compel plaintiffs to convey title to him. It is also clear that the complaint was filed in a "court of this State having civil jurisdiction ..., the object of which is to ... affect the title to real estate...." N.J.S.A. 2A:15-6. A claim for specific performance of a contract to convey title to real estate is not a claim for money damages. B.J.I. Corp. v. Larry W. Corp., 183 N.J. Super. 310, 318 (Ch.Div. 1982).
We view the notice of lis pendens as republication of some of the essential information contained in the complaint and notice of appeal. Wendy's of So. Jersey v. Blanchard, 170 N.J. Super. 491, 495 (Ch.Div. 1979). We are also satisfied that each of the notices of lis pendens related directly to the pending judicial proceeding. Brown was making a claim which affected the specified real estate and he wanted to maintain the status quo. It would be incongruous indeed to say that the complaint and notice of appeal are privileged but the notice of lis pendens filed in the same pending judicial proceeding, designed to give notice and preserve the status quo, would not also be privileged.
Thus, we hold that each of the notices of lis pendens was absolutely privileged. Similarly, other jurisdictions have found that the filing of the notice of lis pendens is absolutely privileged *429 in a slander-defamation of title cause of action. See Woodcourt II Ltd. v. McDonald Co., 119 Cal. App.3d 245, 248-253, 173 Cal. Rptr. 836, 838-840 (1981); Palmer v. Shelby Plaza Motel, Inc., 443 So.2d 285, 286 (Fla.App. 2 Dist. 1983); Berger v. Shea, 150 Ga. App. 812, 258 S.E.2d 621 (1979); Newkirk v. Bigard, 125 Ill. App.3d 454, 459, 80 Ill.Dec. 791, 797, 466 N.E.2d 243, 249 (5 Dist. 1984); Triester v. Tenants Ass'n, 272 Pa.Super. 271, 277-279, 415 A.2d 698, 701-702 (Super.Ct. 1979); see also Annotation: "Recording of instrument purporting to affect title as slander of title," 39 A.L.R.2d 840, §§ 2, 3, 5, 6 (1955).
Finally, even though plaintiffs have not cross appealed, they have urged us to consider affirming the damages awarded based on unpleaded and unproven malicious use of process, tortious interference with contractual relations or tortious interference with prospective economic advantage. Even though we are disinclined generally to even comment upon issues not raised below, Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973), we have chosen to respond briefly. Our review of the record convinces us that plaintiffs are barred as a matter of law from recovering on any of the above theories.
It is clear from the record that the complaint, notice of appeal and notices of lis pendens were all filed by counsel for Brown who had full knowledge of the facts because of the communications between counsel for plaintiffs and counsel for Brown. Reliance on the advice of counsel who has knowledge of the facts creates an absolute defense to a claim of malicious use of process. Cabakov v. Thatcher, 37 N.J. Super. 249, 257 (App.Div. 1955). See also Mayflower Industries v. Thor Corp., supra, 15 N.J. Super. at 172; Dombroski v. Metropolitan Life Ins. Co., 126 N.J.L. 545, 547 (E. & A. 1941). Additionally, the state of the law as to whether time was of the essence for making the additional deposit and for seeking a mortgage was not made clear until Schultz v. Topakyan, 193 N.J. Super. 550, 552-553 (App.Div. 1984) was decided. Finally, the absolute privilege which precludes a slander of title cause of action also *430 precludes a cause of action for tortious interference with contractual relation or economic advantage. "If the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and quasi-judicial proceedings, is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label." Rainier's, 19 N.J. at 564, 117 A.2d 889.
The judgment in favor of plaintiffs is reversed. The matter is remanded to the Law Division for dismissal of the complaint since plaintiffs have not successfully cross appealed from any aspect of the final judgment which is hereby reversed.