NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0384-21

JOHN P. BROWN, JAMES
BROWN, and MICHELLE
SMOCK,

      Plaintiffs-Respondents,

v.

PATRICIA BROWN,

      Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **February 3, 2022**
>
> **APPELLATE DIVISION**

Argued January 19, 2022 – Decided February 3, 2022

Before Judges Fisher, DeAlmeida, and Smith.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2367-20.

Ellis I. Medoway argued the cause for appellant (Archer & Greiner, PC, attorneys; Ellis I. Medoway, Edward J. Kelleher, and Daniel J. DeFiglio, on the briefs).

Barry M. Capp argued the cause for respondents (Ansell Grimm & Aaron, PC, attorneys; Brian E. Ansell, of counsel and on the brief; Barry M. Capp and Kristine M. Bergman, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this interlocutory appeal, we are required to consider the reach and contours of the common law litigation privilege, which insulates a litigant from harmful or defamatory statements or communications made during the course of judicial proceedings. Because the privilege was misapplied here, we reverse in part, affirm in part, and remand for further proceedings.

The appeal arises out of longstanding dispute among the survivors of Michael Brown, who died in 2002. Plaintiffs John P. Brown, James Brown, and Michelle Smock, are decedent's three oldest children; defendant Patricia Brown is decedent's widow and the stepmother of the three plaintiffs. During his lifetime, Michael Brown owned property on Route 35 in Asbury Park on which a Burger King operated. When he died, the parties engaged in litigation in the Probate Part that ultimately resulted in a settlement agreement embodied in a February 2004 order, which gave plaintiffs and Mike Brown Alcini[1] title to the Burger King property[2] and obligated them to "assign" to Patricia Brown "for life

---

[1] Mike Brown Alcini, the child of both decedent and Patricia Brown, is not a party to this suit nor a party to the recent probate action.

[2] This property also includes a vacant lot. We will refer to the entirety as "the Burger King property."

the sum of $3,500.00 [per month] from the rental income received by [them] from Burger King Corporation for the property."

Fourteen years later, the stepchildren began negotiating a sale of the Burger King property. Their attorney advised the prospective buyer that the lease on the property required Burger King to pay them $125,000 per year in rent and that their stepmother had no ownership interest but was entitled "for as long as she is alive" to $3,500 per month from the Burger King rent payments.

Patricia Brown became concerned about the impact of this proposed transaction on her rights,[3] and her attorney wrote to one of the stepchildren seeking information about the status of Burger King's lease, which was scheduled to expire in September 2021; her attorney also asked how the stepchildren planned on "satisfy[ing] [their] ongoing obligation to pay [Patricia] $3,500.00 'for life.'" John Brown replied only with this: "The Corporate Burger King lease is still in full force and effect." Understandably unsatisfied, Patricia's attorney wrote again, asking among other things whether the stepchildren planned on renewing the Burger King lease. John Brown responded with another

---

[3] In August 2018, the stepchildren contracted to sell the property; the contract stipulated, in Section 10(D), that "[s]o long as the Burger King Lease remains in effect and Burger King Corporation remains obligated to pay[,] [Patricia Brown] shall continue to receive $3,500.00 monthly from Burger King Corporation."

A-0384-21

one-sentence letter: "As soon as we retain a lawyer I will have him contact you as soon as possible."

A few months later, Patricia Brown filed a verified complaint in the Probate Part and sought entry of an order requiring her stepchildren to show cause why the 2004 settlement order should not be enforced; she also recorded and served a notice of lis pendens.[4] The stepchildren promptly moved for an order discharging the notice of lis pendens. Based on the papers presented and

---

[4] Because of the role this three-paragraph notice plays in this suit, we quote the entirety of its preamble and first paragraph:

> Notice is hereby given that a suit entitled as above has been commenced and is now pending in said Superior Court of New Jersey, Chancery Division, Probate Part, Monmouth County, the general object of said suit being:
>
> 1. Judicial enforcement of a prior Order of Judgment entered on February 18, 2004, in the above matter concerning the estate of Michael Brown, deceased, which provided plaintiff Patricia Brown . . . with a legal and equitable interest in the property hereinafter described to wit, to the extent of a $3,500.00 monthly payment from defendants John P. Brown, James Brown, Michelle Smock, and Mike Brown Alcini . . . to [p]laintiff for life, from the rental income received relating to that property.

The second paragraph describes the property, and the third states the date the action was filed.

4

without a need for an evidentiary hearing, the Chancery judge entered an order on March 2, 2020, that dismissed the complaint with prejudice and discharged the notice of lis pendens.[5]

In June 2020, Patricia's stepchildren and the buyer amended their contract by removing that part of Section 10(D) concerning Burger King's obligation to pay Patricia $3,500 per month and replacing it with an amendment stating that the buyer and the stepchildren had "agree[d] that [Patricia Brown] shall no longer be entitled to receive any monthly rent" from Burger King "or otherwise." The transaction closed on June 25, 2020, and the buyer purchased the Burger King property for $1,550,000.[6]

The stepchildren then commenced this action against Patricia Brown in the Law Division, asserting that her complaint and notice of lis pendens in the preceding probate action constituted: tortious interference with an existing contractual relationship; tortious interference with a prospective economic advantage; abuse of process; and malicious prosecution.

---

[5] Patricia Brown did not appeal that disposition.

[6] The stepchildren claim the price was $150,000 less than originally agreed, allegedly because of the impact of Patricia Brown's notice of lis pendens.

A-0384-21

Patricia Brown moved for summary judgment, arguing the litigation privilege immunized her from all these claims. The motion judge granted the motion in part and dismissed the malicious prosecution[7] and abuse of process claims. But the judge denied the rest of the motion by finding that the litigation privilege did not apply to the notice of lis pendens because "neither the . . . property itself, nor any lien upon it, was [] an object of the litigation." Cross-motions for reconsideration did not alter this holding except plaintiffs were permitted to file an amended complaint, which added counts that focused on the allegation that Patricia Brown maliciously filed the notice of lis pendens.

We granted leave to appeal to consider Patricia Brown's contention that the judge misapplied the litigation privilege in denying in part her summary judgment motion and in allowing plaintiffs to proceed with their tortious interference counts. Plaintiffs did not seek leave to appeal the dismissal of their malicious prosecution and abuse of process claims, so we will not determine whether the judge correctly dismissed them.

Patricia Brown argues in this interlocutory appeal that the judge misapplied the litigation privilege. We agree, but not in the way she would have

---

[7] The dismissal of the malicious prosecution claim was based on the fact that such a claim arises only when the earlier proceeding was a criminal prosecution. See LoBiondo v. Schwartz, 199 N.J. 62, 89 (2009).

6

us hold. The parties' arguments focus on the judge's determination that the litigation privilege insulated Patricia Brown from parts of the stepchildren's complaint as well as the distinction the judge drew between her complaint and her notice of lis pendens. Their arguments, in essence, presuppose the application of the litigation privilege, and their dispute concerns the extent to which it should apply here. Because we review orders and not opinions, Hayes v. Delamotte, 231 N.J. 373, 387 (2018), we affirm in part the trial court's order denying summary judgment on the tortious interference claims despite our disagreement with the reasons provided by the trial judge. We also reverse in part and remand for entry of partial summary judgment because we conclude that the litigation privilege does in fact insulate Patricia Brown from claims based on her notice of lis pendens.

What was misconceived in the trial court was what the litigation privilege protects. The privilege does not protect a party from the tortious impact caused by a party's prior suit; it protects only statements made during the prior suit. That is, as the Court recognized in Hawkins v. Harris, 141 N.J. 207, 216 (1995), and later in Loigman v. Twp. Comm. of Middletown, 185 N.J. 566, 585 (2006), the protective shield of the litigation privilege applies to "any communication . . . made in judicial or quasi-judicial proceedings" (emphasis added). It does not

protect a litigant from a subsequent suit seeking redress for injuries caused by an adversary's very act of commencing and prosecuting the earlier suit if that suit was frivolous, vexatious or tortious.

This distinction is best understood when considering the historical rise of the litigation privilege, which, like most of our common law, derives from ancient English principles. Hawkins, 141 N.J. at 214, 222. Justice O'Hern thoroughly canvassed for the Court in Hawkins how – and why – the privilege has been used to protect judges, attorneys, witnesses, and parties from fear of later litigation based on statements made during judicial proceedings. Id. at 213-22. Hawkins took particular note of Chief Justice Hughes's description of the public interest that gave rise to the privilege when the Chief Justice sat as a member of this court:

> The doctrine that an absolute immunity exists in respect of statements, even those defamatory and malicious, made in the course of proceedings before a court of justice, and having some relation thereto, is a principle firmly established, and is responsive to the supervening public policy that persons in such circumstances be permitted to speak and write freely without the restraint of fear of an ensuing defamation action, this sense of freedom being indispensable to the due administration of justice.
>
> [Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 117 (App. Div. 1957).]

The privilege's reach in the present matter is best understood when illuminated by these basic principles. For example, had Patricia Brown – in furtherance of her earlier probate action – made a defamatory and malicious statement in the verified complaint or in an affidavit or from the witness stand, that statement would fall within the privilege – so long as it had "some relation to the nature of the proceedings," Devlin v. Greiner, 147 N.J. Super. 446, 453 (Law Div. 1977) (cited and quoted with approval in Hawkins, 141 N.J. at 215)[8] – and a later action by the injured person based on that statement would be vulnerable to the litigation privilege. But the privilege doesn't immunize Patricia Brown from an action that alleges her earlier suit tortiously interfered with the stepchildren's contract to sell the Burger King property or some other prospective economic advantage. A statement made during that judicial proceeding may be privileged but the suit's commencement and prosecution is not. So, we affirm the denial of summary judgment based on the privilege but for these reasons, not those expressed by the trial judge.

---

[8] In this respect, New Jersey's version of the litigation privilege differs from its English counterpart, which applies the privilege regardless of the relevancy of the statement to the proceeding. Hawkins, 141 N.J. at 214-15. Relevancy in this context, however, should be defined broadly and liberally. Fenning, 47 N.J. Super. at 118; see also DeVivo v. Ascher, 228 N.J. Super. 453, 461 (App. Div. 1988).

9

We additionally note that the trial judge gave considerable thought to our decision in Lone v. Brown, 199 N.J. Super. 420 (App. Div. 1985), which has also been discussed at length by both parties in their appellate submissions. That action had its genesis in Brown's contract to buy Lone's Boonton Township home. Believing Brown failed to meet a mortgage contingency provision, Lone declared the contract void and contracted to sell the property to Seiler. Brown filed a notice of lis pendens and a complaint seeking specific performance and, when that action was dismissed, he appealed and filed another notice of lis pendens, all of which apparently prompted Seiler to void his contract with Lone, who then filed suit against Brown, alleging slander of title. Brown appealed the judgment entered against him in the slander-of-title action, arguing in part that the complaint, notice of appeal, and two notices of lis pendens he filed in the specific-performance suit were absolutely privileged. We held that all Brown's filings were privileged and found no reason to distinguish the notices of lis pendens from the complaint – a distinction the trial judge here made – because the notice simply republished information contained in the complaint. Id. at 428.

Although we agree with many aspects of Lone, we disagree to the extent that decision may be viewed as suggesting the very commencement and prosecution of a suit is privileged. That is, we agree a complaint is a "part of the

judicial proceedings" as <u>Lone</u> observed, <u>id.</u> at 427, and we certainly agree statements contained in a complaint may be protected by the litigation privilege and insulate the pleader from claims for damages in a subsequent suit. But the commencement and prosecution of the action – if the action can be shown to be frivolous, vexatious or tortious – is not cloaked by the privilege. Indeed, accepting <u>Lone</u> for what it appears to hold – that one is always protected by the litigation privilege when filing an action that is later alleged to constitute a slander on title – would mean that a slander-of-title claim based on a prior suit would never be cognizable.

Following <u>Lone</u> in that respect would mean an injured party would only be able to maintain a slander-of-title action if the malicious claim against property was made in a way other than through a lawsuit. For example, if A makes false statements in the media that he is the true owner of B's property, A would have a maintainable slander-of-title action because the litigation privilege applies only to statements made in judicial proceedings. But if A sues B and falsely asserts ownership of B's property in that suit, B would be unable, according to <u>Lone</u>, to prosecute a slander-of-title claim against A, regardless of the damage wrongfully caused, because of the litigation privilege. We do not believe <u>Lone</u> intended to reach so far. To be sure, a complaint is a part of a

judicial proceeding, as we said in <u>Lone</u>, but the privilege cloaks the statements within, not the act of filing and maintaining the complaint.[9]

We turn next to the application of the litigation privilege to notices of lis pendens. We start with the same understanding that statements contained within a notice of lis pendens are certainly protected by the litigation privilege. The very nature of a notice of lis pendens, when properly asserted, is its recitation or repetition of statements made in a complaint about the suitor's claim of "title to, interest in or lien upon" described real estate. N.J.S.A. 2A:15-7. That is, a proper notice of lis pendens is a statement or communication of what is alleged in the complaint; when it is recorded as part of, or in the course of, a judicial proceeding, and has some relation to and was intended "to achieve the objects of the litigation," <u>Hawkins</u>, 141 N.J. at 216 – elements clearly present here[10] –

---

[9] For these reasons, we also choose not to adhere to <u>Lone</u>'s determination that the privilege "precludes a cause of action for tortious interference with contractual relation or economic advantage." <u>Id.</u> at 430. Again, the statements made during the litigation may be covered by the privilege regardless of the label placed on the later action, as held in <u>Rainier's Diaries v. Raritan Valley Farms, Inc.</u>, 19 N.J. 552, 564 (1955), and on which <u>Lone</u> relied in this regard, but the act of suing is not protected when the suitor later becomes the target of a tortious interference claim.

[10] We note that counsel for the stepchildren acknowledged at oral argument here that there is no false statement in the notice of lis pendens and that it accurately reflects and repeats what Patricia Brown alleged in her complaint. They argue

it is entitled to the protection afforded by the litigation privilege. To that extent, we agree with <u>Lone</u>, 199 N.J. Super. at 428-29.

Considering whether the litigation privilege insulates a party from a suit for damages caused by the filing of an unauthorized, inaccurate, or false notice of lis pendens is, however, another matter. In ruling on the motion, the trial judge's decision blurred the distinction between an unauthorized recording of a notice of lis pendens and the privilege that attaches to its contents. That is, the trial judge refused to apply the litigation privilege to Patricia Brown's notice of lis pendens because he believed the record did not permit a conclusion that "the lis pendens was filed to achieve the goals of the litigation." And in reaching that conclusion, the judge viewed the prior action as an attempt by Patricia Brown "to enforce the terms of a settlement agreement" and ascertained through his examination of the pleadings that Patricia Brown only sought "a specific amount of money" that was "not secured by a lien on real property."

We disagree with the conclusion reached by the judge in declining to hold that the notice of lis pendens was protected by the litigation privilege. The judge misapprehended the scope of N.J.S.A. 2A:15-6, which authorizes the filing and

---

instead that the claim described in the notice of lis pendens had no merit and was shown to have no merit by the chancery judge's dismissal of Patricia Brown's action to enforce the settlement agreement.

recording of a notice of lis pendens in an action "the object of which is to enforce a lien upon real estate or to affect the title to real estate or a lien or encumbrance thereon." It is certainly true, as the judge observed, that this statute also declares that "[n]o notice of lis pendens shall be filed . . . in an action to recover a judgment for money or damages only" and it is also true that Patricia Brown sought in her complaint "[e]nforc[ement] . . . of the [2004] [s]ettlement [o]rder and confirm[ation] [of] [d]efendants' ongoing obligation to pay [her] the monthly sum of $3,500.00 for [her] lifetime and the mechanism for such monthly payments." But, even assuming that demand constitutes only a claim for money or damages,[11] the judge's holding overlooks that Patricia Brown additionally asserted in her ad damnum clause that she sought the "impos[ition] [of] a constructive trust upon the proceeds of any sale of the Burger King [p]roperty." So, while Patricia Brown also sought and would, in a practical sense, undoubtedly have been satisfied with some guarantee that she would be paid what she believed was due her, one of the means she asserted for securing her rights under the settlement agreement was the imposition of a constructive

---

[11] Had the 2004 order that embodied the settlement agreement been recorded, even this assertion would have permitted the recording of a notice of lis pendens. The parties were unable to advise us at oral argument whether that order was recorded.

14

trust. We recognize Patricia Brown did not claim, in either her complaint or her notice of lis pendens, that she believed she held title, in whole or in part, to the Burger King property or that she believed her stepchildren did not hold title. But N.J.S.A. 2A:15-6 is not that limited; Patricia Brown was entitled to record a notice of lis pendens to make known that she asserted in her complaint a claim to an equitable lien derived from the Burger King property or on an interest in an encumbrance (the lease) on the property.

We held as much in Polk v. Schwartz, 166 N.J. Super. 292, 298 (App. Div. 1979), where the plaintiffs sought to impose a constructive trust on real property. To be sure, Patricia Brown's claim did not directly attack the titleholder's interest as did the pleader in Polk, but, as we have said, N.J.S.A. 2A:15-6 is not limited to claims challenging or questioning title. It also allows a recording of a notice of lis pendens when the object of the suit affects "a lien or encumbrance thereon." Patricia Brown's complaint in the prior action sought to impose a lien on the proceeds of the sale of the Burger King property, which was encumbered by a lease in which she had an interest.[12]

---

[12] For example, had Burger King filed suit alleging the sale of the property caused a wrongful termination of its lease, it too would have been entitled to file a notice of lis pendens under N.J.S.A. 2A:15-6.

A-0384-21

We conclude, for these reasons only,[13] that Patricia Brown was authorized by N.J.S.A. 2A:15-6 to record a notice of lis pendens in the prior suit and that its contents were protected by the litigation privilege. We reverse the order under review to the extent it memorialized the trial judge's denial of summary judgment on plaintiffs' claims that Patricia Brown injured them by recording a notice of lis pendens.

*  *  *

To summarize, we conclude the judge erred in denying that part of Patricia Brown's motion that sought summary judgment in her favor on all the claims, or

---

[13] We recognize there may be other reasons why plaintiffs might not have a cognizable claim against Patricia Brown based on the notice of lis pendens. First, the statutes applicable to this device – N.J.S.A. 2A:15-6 to -17 – arguably presuppose that all relief for a wrongful filing of a notice of lis pendens must occur within the suit in which the notice is filed. A subsequent suit containing a claim that a notice of lis pendens caused injury might therefore be subject to dismissal under the entire controversy doctrine. We are mindful that Patricia Brown invoked the entire controversy doctrine when moving for summary judgment, but she has not argued in this appeal – and we therefore do not consider – that the trial judge erred in denying relief on that basis. Second, it is arguable that the statutory provisions governing the filing of notices of lis pendens have preempted the field. The notice of lis pendens has common law roots but it is now a statutory creature. Because the provisions set forth in N.J.S.A. 2A:15-6 to -17 delineate not only the ways and means for recording a notice of lis pendens but also how and when a party may seek its removal or discharge – yet contains no provision for monetary relief to a wronged party – it is not at all certain that the common law would authorize a claim for damages caused by an impermissible notice of lis pendens.

A-0384-21

parts of the claims, insofar as they alleged damages caused by the statements in, or the recording of, the notice of lis pendens. We otherwise affirm the denial of summary judgment as to the tortious interference claims because the litigation privilege protects only statements made in judicial proceedings and not the commencement of frivolous, vexatious or tortious lawsuits; in so holding, we offer no view as to whether Patricia Brown's prior suit was frivolous, vexatious or tortious. In so disposing of this appeal, we merely conclude that on the existing record there is no basis for applying the litigation privilege – beyond its application to the notice of lis pendens – as to the remaining claims; we offer no view of the substance or viability of those remaining claims.

We also repeat that because plaintiffs did not seek leave to appeal other aspects of the same order, we do not consider or decide whether the trial judge correctly granted summary judgment on the other claims in the original complaint. And we do not address the sufficiency of the new claims contained in the amended complaint, which was permitted when the judge ruled on the parties' cross-motions for reconsideration, because those claims have yet to be challenged or examined in the trial court.[14]

_____

[14] We reject Patricia Brown's argument that the judge should not have allowed her stepchildren to file the amended complaint; such pleadings are to be

A-0384-21

The June 29, 2021 trial court interlocutory order is affirmed in part and reversed in part, and the matter is remanded for the entry of an appropriate order memorializing our disposition and for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

permitted with liberality. In so holding, we again emphasize that we offer no view about the sufficiency of the claims contained in the amended complaint.

A-0384-21