**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1420-22

WELLS FARGO BANK, N.A.,

     Plaintiff-Respondent,

v.

ARLINE FRIEDMAN
and MRS. MILTON D.
FRIEDMAN,

     Defendants,

and

THE ESTATE OF
MILTON D. FRIEDMAN,
deceased,

     Defendant-Appellant.

_____

Submitted May 15, 2024 – Decided July 8, 2024

Before Judges Susswein and Vanek.

On appeal from the Superior Court of New Jersey, Law
Division, Morris County, Docket No. L-0249-19.

Nish & Nish, LLC, attorneys for appellant (Robert J. Nish, on the brief).

Reed Smith, LLP, attorneys for respondent (Aaron M. Bender, of counsel and on the brief).

PER CURIAM

This foreclosure matter returns to us following a remand. Defendant Estate of Milton D. Friedman (Estate) appeals from an April 13, 2022 Law Division order denying its motion to dismiss and a November 29, 2022 order granting summary judgment in favor of plaintiff Wells Fargo Bank, N.A., dismissing the Estate's counterclaim alleging slander of title. After carefully reviewing the record in light of the governing legal principles and arguments of the parties, we affirm.

I.

We discern the following pertinent facts and extensive procedural history from the record. Milton Friedman and codefendant Arline Friedman, his then-wife, purchased property in 1970. In 2001, Arline[1] secured a loan with the property. In May 2006, she refinanced the loan, obtaining a mortgage from

---

[1] We use first names because Arline and Milton share the same last name. We mean no disrespect in doing so.

Wachovia Bank.[2] Milton claimed he never signed the May 2006 mortgage. In June 2006, Wachovia extended a line of credit and encumbered the property with a new mortgage. Wells Fargo claimed that Arline used the line of credit to pay down the May 2006 loan, pay the property's taxes, and pay Milton's living expenses. Milton claimed he did not sign the June 2006 mortgage.

In June 2015, Arline defaulted on the June 2006 mortgage. In July 2016, Wells Fargo filed a foreclosure complaint. In September 2017, Wells Fargo filed an amended complaint asserting claims for: foreclosure of the property (count one); possession of the property (count two); an equitable lien based on the loan (count three); an equitable lien based on charges paid by Wells Fargo (count four); an action on the subject note (count five); an action against Arline on the related note (count six); equitable subrogation based on the related loan (count seven); and unjust enrichment (count eight).

Milton filed an answer and counterclaims seeking to: discharge the mortgage as void (count one); discharge another mortgage on the property (count two); recover damages for common law fraud (count three); recover damages under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -228,

_____

[2] Wachovia is Wells Fargo Bank's predecessor-in-interest. The parties do not dispute that Wells Fargo is the party in-interest in the present matter.

(count four); and recover damages under common law fraud (count five). Wells Fargo filed a motion to dismiss counts three through five of Milton's counterclaim.

On June 22, 2018, the Chancery Division judge transferred counts three through eight of Wells Fargo's amended complaint to the Law Division.[3] The judge denied reconsideration of the transfer order and ordered that count two of the counterclaim also be transferred to the Law Division. Thus, matters were pending in both the Law and Chancery Divisions.

On January 2, 2019, the Chancery Division conducted a trial on the claims remaining in that Division. The judge found a Wachovia employee[4] forged Milton's signature on the loan documents at issue. On January 30, 2019, the judge entered an order dismissing counts one and two of Well Fargo's amended complaint with prejudice. The judge also entered judgment in favor of Milton on count one of his counterclaims, discharging the subject mortgage.

Wells Fargo appealed from the Chancery Division's January 30, 2019 order and the June 22, 2018 transfer order. On January 29, 2020, we affirmed

---

[3] The same judge presided over both actions, sitting in the Chancery and Law Divisions.

[4] The employee was later terminated for "other misconduct."

both rulings. See Wells Fargo Bank v. Friedman, No. A-3028 (App. Div. Jan. 29, 2020). Before we rendered our decision on the Chancery Division orders, the parties filed pleadings in the Law Division.

On February 1, 2020, the Estate filed a motion in the Law Division to amend the pleadings to substitute it for Milton, who passed away. The Estate also moved for summary judgment.

On February 12, 2020, Wells Fargo filed a motion for leave to file and serve a second amended complaint. The Estate filed a cross-motion for dismissal. On March 3, 2020, Wells Fargo filed its opposition to the Estate's motion for summary judgment and a cross-motion for partial summary judgment.

The Law Division judge heard oral argument on the motions and subsequently entered four orders. The first order substituted the Estate for Milton; entered judgment in favor of the Estate on count one of its counterclaim; and entered judgment on counts two, six, and eight of the amended complaint. The second order denied Wells Fargo's motion to amend its complaint. The third order dismissed the Estate's cross-motion as moot. The fourth order denied Wells Fargo's cross-motion for partial summary judgment with prejudice.

On July 10, 2020, the Estate supplemented its claim for damages on count one of its counterclaim. On August 20, 2020, the Law Division entered a judgment in favor of the Estate in the amount of $197,888.71 for the fees incurred while litigating the Chancery Division action and transferring the claims to the Law Division.

Wells Fargo appealed, relying on a respondeat superior argument it had not raised before the Law Division. We chose to address the respondent superior argument on the merits, ruling in our December 9, 2021 opinion:

> The Estate's sole argument on appeal is that the loan officer was an employee of plaintiff's predecessor-in-interest. This was the same, and only, basis for the judge's ruling on the slander of title claim. However, the record is devoid of evidence regarding the loan officer's intentions and evidence that [Wells Fargo's] predecessor-in-interest authorized or encouraged the loan officer to forge Milton's signature or falsely notarize the signatures. The record is also bereft of evidence that the loan officer was motivated by a purpose to serve his employer in forging the signature or a reason that [Wells Fargo's] predecessor-in-interest would expect that such a criminal act would be undertaken.
>
> Viewing the evidence in the light most favorable to plaintiff, and in light of the case law, there exists a genuine issue of material fact pertaining to the loan officer's actions and whether he was acting within the scope of employment. As such, there was a question of fact as to the element of malice on the slander of title

6

claim which precludes summary judgment. As to the ruling on the slander of title claim, we reverse.

> [Wells Fargo Bank, N.A. v. Friedman, (Friedman II) Docket No. A-0095-20 (App. Div. Dec. 9, 2021) (slip op. at 12-13).]

We remanded for further proceeding consistent with our opinion. We concluded:

> In sum, we affirm the judge's grant of summary judgment to the Estate on the equitable claims, and the judge's denial of leave to amend. We reverse as to the judge's grant of summary judgment in favor of the Estate on the slander of title theory, and as to the award of costs of litigation and attorney's fees for the slander of title action.
>
> [Id. at 20-21.]

In February 2022, the Estate filed a motion in the Law Division to shift the burden of proof with respect to Wells Fargo's "avoidance of principal liability for an agent's actions." Wells Fargo filed a motion to dismiss the Estate's remaining claim of slander of title with prejudice or, in the alternative, to keep the claim in the Chancery Division.

On April 13, 2022, the Law Division judge ruled on the motions, concluding the Estate bore the burden of establishing the elements of its slander of title claim, including respondeat superior. The judge reasoned:

So, the plaintiff on the counterclaim is the [E]state, and it bears the burden to prove its slander of title claim. The . . . cases don't support the notion that it . . . falls to the . . . bank to affirmatively disprove its liability. It's up to the [E]state to prove the elements of the cause of action of slander of title, as well as the elements of respondeat superior.

So, in response to the . . . motion of the [E]state then, the [c]ourt . . . denies the motion and determines that the burdens here fall[s] to the [E]state to . . . establish its slander of title claim under these circumstances, which include . . . the fraudulent mortgage.

The judge also denied Wells Fargo's motion to dismiss. Instead, the judge allowed the parties to exchange discovery regarding the slander of title claim, fixing a discovery end date of August 31, 2022.

On November 29, 2022, after the supplemental discovery was completed, the Law Division judge heard argument on the parties' competing summary judgment motions. Wells Fargo argued the Estate's slander of title claim was time barred. In an oral decision on the record, the judge rejected that argument.

Ruling on the Estate's summary judgment motion, the judge stated:

Now, the record today, or the record as of the time the Appellate Division—well, the record as of the time this [c]ourt issued its determination in favor of defendant on its counterclaim on the slander of title, of course, didn't change. The Appellate Division examined the record. It didn't change before it got to the Appellate Division. The Appellate Division examined that record, found it . . . wanting for purposes of granting the

counterclaimant judgment, as a matter of law on the slander of title claim. So, the [Appellate Division] remanded.

This [c]ourt entered . . . a case management order earlier this year, I think it was March or April perhaps, setting up a period of discovery so that the parties could develop the factual background that they deemed necessary to address the Appellate Division's decision. In the course of that, I think it was roughly four months—the discovery period ended in August 2022. The . . . [E]state filed one set of interrogatories on [Wells Fargo]. Answers . . . were provided. The [E]state argues those responses were inadequate, but it did not move for more specific responses. And so, that—and there were no depositions, no document exchanges, as far as I know. None . . . of that has been brought to this [c]ourt's attention on these applications. And so, the record is . . . precisely the same as it was when the Appellate Division examined these questions.

And for that reason, this [c]ourt . . . has no record basis upon which to enter summary judgment in favor of . . . the [E]state.

Turning to Wells Fargo's summary judgment motion, the judge concluded:

The [c]ourt is compelled to grant that motion because the Appellate Division clearly stated in its opinion, in its decision that the record, as it existed at the time the [c]ourt originally granted summary judgment to the [E]state, was insufficient to support that . . . granting of summary judgment. The factual record has . . . not changed, as I say. There's no basis upon which the . . . [E]state can proceed on its claim. It . . . took very limited discovery. There's . . . no deposition evidence. There's no certification . . . . [T]here's no . . . information that this [c]ourt could assess.

9

The [E]state offers up a document that it argues impliedly suggests that [the Wachovia employee] was fired shortly after the forgery, but the [c]ourt can't reach that conclusion from that document. It . . . doesn't support the argument. He was terminated but for reasons that we don't know about from the document. And it's not specifically tied into this—to his wrongful act.

So, this record, as the Appellate Division said, does not contain any information suggesting that the slander of title claim can be proved. There's no material question of fact in that regard. And so, the [c]ourt grants the motion of the bank for summary judgment, dismissing the slander of title counterclaim with prejudice, and the [c]ourt will . . . get orders entered.

This appeal follows. The Estate contends Wells Fargo's respondeat superior argument is essentially an affirmative defense and that Wells Fargo has the burden of establishing it is not liable under that doctrine. The Estate further contends it established slander of title and that Wells Fargo should answer for the misconduct of the Wachovia employee who forged Milton's signature. The Estate also urges us to correct what it claims to be error in our December 9, 2021 opinion, which addressed the respondeat superior argument even though it was not raised at the Law Division level.

II.

We review decisions granting summary judgment de novo. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). A grant of summary judgment is appropriate if

10

"there is no genuine issue as to any material fact" and the moving party is entitled to judgment "as a matter of law." R. 4:46-2(c). We therefore "must 'consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Samolyk, 251 N.J. at 78 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

Turning to substantive legal principles, the tort of slander of title is the "'publication of a false assertion concerning [the] plaintiff's title, causing [the] plaintiff special damages.'" Peters Well Drilling Co. v. Hanzula, 242 N.J. Super. 16, 24 (App. Div. 1990) (quoting Lone v. Brown, 199 N.J. Super. 420, 426 (App. Div. 1985)). In Lone, we stated "the tort of slander of title requires a plaintiff to establish that defendant falsely published an assertion concerning plaintiff's title which caused special damages to the plaintiff and that defendant acted out of malice, which was express or implied." 199 N.J. Super. at 426. "Malice is defined as the intentional commission of a wrongful act without just cause or excuse." Ibid.

We next apply these general principles to the matter before us. We first address the Estate's contention that Wells Fargo has the burden of proof with

respect to the slander of title claim. We agree with the Law Division judge that because the Estate is the plaintiff in the counterclaim, it bears the burden of proof. We are unpersuaded by the Estate's argument that because Wells Fargo raised the respondeat superior argument, it is tantamount to an affirmative defense. The Estate cites no direct authority to support the proposition that the burden of proof initially borne by a plaintiff in a slander-of-title action shifts to the defendant when a question arises whether the defendant is legally responsible for the conduct of an employee who committed the tort. We hold that because the Estate is the plaintiff in the slander-of-title counterclaim, it bears responsibility for proving the elements of that tort. Thus, the Estate bears the burden of proving that the tortious actions of the loan officer upon which the Estate's counterclaim depends are attributable to Wells Fargo.

We decline the Estate's request to reconsider our prior decision in which we chose to address the respondeat superior issue notwithstanding that Wells Fargo had not presented it to the Law Division judge. The principle that appellate courts "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available," explained in Nieder v. Royal Indemnity Insurance Co., 62 N.J. 229, 234 (1973), is not a categorical rule. We note the Estate did not seek

reconsideration or appeal our prior decision, but instead conducted discovery and litigated the respondeat superior dispute following our remand order. See R. 2:11-6.

Turning to the substantive elements of respondeat superior, our Supreme Court in Carter v. Reynolds explained, "[t]o establish a master's liability for the acts of his servant, a plaintiff must prove (1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." 175 N.J. 402, 409 (2003). Under this doctrine, "[g]enerally, a principal is liable for the tortious acts of an agent acting within the scope of his or her authority." Baldasarre v. Butler, 132 N.J. 278, 289 (1993). The four factors used in determining whether an employee acts within the scope of his employment are:

> (a)    it is of the kind he is employed to perform;
>
> (b)    it occurs substantially within the authorized time and space limits;
>
> (c)    it is actuated, at least in part, by a purpose to serve the master; and
>
> (d)    if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

A-1420-22

[Davis v. Devereux Found., 209 N.J. 269, 303 (2012) (quoting Restatement (Second) of Agency § 219 (Am. L. Inst. 1958)).]

Importantly, our Supreme Court has noted that "[o]nly rarely will intentional torts fall within the scope of employment." Ibid. In the matter before us, we are at a loss to understand how the Wachovia employee's forging of Milton's signature served the interests of his employer.

We add that because the Estate bears the burden of proving its counterclaim, it bears the burden of proving malice. The Estate relies on Rogers Carl Corp. v. Moran, 103 N.J. Super. 163, 168 (App. Div. 1968), for the proposition that "[w]hen the tortfeasor is a 'stranger', malice is presumed." We are not convinced the loan officer who forged Milton's signature was a stranger to the financial transaction within the meaning of Moran. We decline to speculate on why the Wachovia employee forged Milton's signature. Therein lies the problem.

Even after supplemental discovery was allowed, the Estate has presented no evidence as to the loan officer's motivation. As the Law Division judge noted, "the record is . . . precisely the same as it was when the Appellate Division examined these questions." Relatedly, the judge found, "there is no record of evidence the plaintiff's predecessor in interest authorized or

A-1420-22

encouraged the loan officer to forge Milton's signature or falsely notarize the signature."

In these circumstances, we agree with the Law Division judge's decision to grant summary judgment in favor of Wells Fargo on the slander of title counterclaim. To the extent we have not specifically addressed them, any remaining contentions raised by the Estate lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION